Petitioner: **ARGUS REAL ESTATE, INC.,**

v.

Respondent: **E–470 PUBLIC HIGHWAY AUTHORITY.**

No. 04SC100.

Supreme Court of Colorado.

March 28, 2005.

Montgomery Little & McGrew, P.C., Frederick B. Skillern, Patrick T. O'Rourke, Greenwood Village, for Petitioner.

Icenogle, Norton, Smith & Blieszner, P.C., Edward J. Blieszner, Carolyn R. Steffl, Denver, for Respondent.

MARTINEZ, Justice.

Petitioner, Argus Real Estate, Inc. (Argus), appeals from a court of appeals decision affirming the district court's entry of summary judgment in favor of respondent, E–470 Public Highway Authority (the Authori-

ty). *See Argus Real Estate, Inc. v. E-470 Public Highway Auth.*, 97 P.3d 215 (Colo. App.2003). This case was filed in the district court after the entry of final judgment in a previous quiet title action. The district court in this case found, and the court of appeals agreed, that Argus' claim for statutory reformation pursuant to section 15–11–1106(2), C.R.S. (2004), was barred by the doctrine of res judicata because the rights associated with the property at issue and the agreement for which Argus seeks reformation were completely adjudicated in the previous quiet title action.

We granted certiorari on the issue of whether the court of appeals erred in upholding the district court's entry of summary judgment based on its conclusion that res judicata precludes the filing of a separate action requesting reformation of a property agreement under section 15–11–1106(2) when the claim for reformation could have been brought in the first action and was not. We hold that in absence of any clear intent to abrogate the common law doctrine of res judicata, section 15–11–1106(2) does not provide an exception to res judicata such that Argus may raise the statutory reformation claim in a subsequent judicial proceeding when the claim could have been raised in the previous action. Accordingly, we affirm the decision of the court of appeals.

## I. Facts and Procedure

In 1990, landowner Britton Ranch, Ltd. (Britton) entered into an agreement (the agreement) with the Authority whereby Britton would donate a parcel of real property (the parcel) to the Authority for the purpose of constructing the E–470 highway. The agreement was signed on behalf of Britton by a representative of Britton's general partner Argus Real Estate Partners, Inc. (Partners). Pursuant to section 5.3 of the agreement, if the Authority no longer needed the parcel, or any portion of it, the Authority would offer the parcel, or the unneeded portion, back to Britton or its assigns by quitclaim deed for no charge.[1]

Four months after entering into the agreement, Britton executed a "gift deed" granting the parcel to the Authority. The gift deed, however, did not have any provision mirroring that of section 5.3 in the agreement. After granting the parcel to the Authority, Britton then assigned its interest in the agreement to Argus.

The Authority subsequently constructed the highway, but did not use the parcel. The highway was instead built approximately one-half mile away from the parcel.

In 2000, the Authority initiated a civil action against Britton and Partners (hereafter collectively referred to as "Britton"[2]) asserting two claims (*Argus I*). First, the Authority sought declaratory judgment that section 5.3 of the agreement with Britton was extinguished or rendered ineffective because the gift deed was controlling and had no similar language. Second, the Authority asserted a quiet title claim requesting that title to the parcel be quieted in the Authority.

Britton answered on behalf of itself and its successors in interest and also counterclaimed for breach of contract, specific performance, and declaratory judgment. In addition, Britton counterclaimed seeking quiet title in Britton or its successors in interest. In support of the counterclaims, Britton asserted that the agreement was binding and, because the Authority did not use the parcel for the construction of the highway, the Authority "no longer needed" the parcel and was obligated under the agreement to convey it back to Britton or Britton's successors in interest by quitclaim deed.

On the Authority's motion for summary judgment, the district court found that any interest in the parcel created by section 5.3

1. Section 5.3 of the agreement states:

   If the Authority no longer has a need for all or any portion of the Property Rights acquired pursuant to this Agreement, after passing an appropriate Resolution the Authority shall offer the Property Rights or any portion of them for which it no longer has a need to [Britton], or its successors and assigns, by quit claim deed without charge.

2. Although we refer to both parties collectively as "Britton" as a matter of convenience, we recognize Britton and Partners as separate entities. Where we find it necessary to refer to the entities individually, we identify them as such.

was a nonvested interest and was subject to the rule against perpetuities. The court concluded that the interest was invalid because under the language of the agreement there was no means to determine when, if ever, the Authority would "no longer [have] a need" for the parcel and thus no way to determine when, if ever, Britton's interest would vest. As such, the district court held the nonvested interest was void under the rule against perpetuities and the Authority was entitled to judgment as a matter of law. On this basis, the district court quieted title to the parcel in the Authority.

Britton appealed the district court's entry of summary judgment and the court of appeals affirmed.[3] *See E–470 Public Highway Authority v. Argus Real Estate Partners, Inc.*, 70 P.3d 481 (Colo.App.2002).

In June 2002, Argus, as the assignee of Britton's interest in the agreement with the Authority, filed this action (*Argus II*) against the Authority asserting promissory estoppel and unjust enrichment claims. Argus also asserted claims seeking common law reformation of the agreement and statutory reformation pursuant to section 15–11–1106(2) of the Colorado Statutory Rule Against Perpetuities Act (the Act).

The Authority immediately moved to dismiss the claims as barred by the doctrines of res judicata and collateral estoppel. Argus contended the claims were not barred, arguing, *inter alia*, that section 15–11–1106(2) provides an exception to the doctrine of res judicata. Specifically, Argus argued that section 15–11–1106(2) authorizes a court to reform an agreement to effect the intent of the parties where a court has made a prior judicial determination that an interest violates Colorado's common law rule against perpetuities. Argus contended that the General Assembly intended section 15–11–1106(2) to apply to a second court proceeding, therefore abrogating any common law principles of res judicata. Accordingly, Argus argued that because the court in *Argus I*

determined that the nonvested interest created by section 5.3 of the agreement violated the common law rule against perpetuities, the court in *Argus II* was authorized by section 15–11–1106(2) to reform the agreement.

The district court rejected Argus' argument that section 15–11–1106(2) provides an exception and held that the doctrine of res judicata was applicable to the claims Argus asserted. The court noted that res judicata bars subsequent claims where there exists a final judgment in the first case and identity of subject matter, claims, and parties between the two cases. The court determined that each of these factors were present: there was a final judgment in the first case; this case involved the same parcel of land; the claims in this case involve the same assertion of legal right to the parcel as the first case; and Argus was in privity of estate with Britton and therefore Argus had an identity of parties in both lawsuits. Thus, the district court concluded that Argus was bound by the judgment in *Argus I* and its claims were barred as a matter of law by res judicata. Consequently, the district court treated the Authority's motion to dismiss as a motion for summary judgment and entered summary judgment in favor of the Authority.

Argus appealed and the court of appeals affirmed the district court's entry of summary judgment. *See Argus Real Estate, Inc. v. E–470 Public Highway Auth.*, 97 P.3d 215 (Colo.App.2003). The court of appeals refused to read section 15–11–1106(2) as an exception to the doctrine of res judicata. *Id.* at 219. The court found that the language of section 15–11–1106(2) does not identify when reformation claims should be raised and therefore an interested party could raise the claim in the same proceeding where it is determined that the rule against perpetuities was violated. *Id.* Because there is a "strong public policy favoring the finality of litigation and the security and marketability of titles, . . . and the ability of a claimant to plead alternative claims for relief," the court found

3. The court of appeals denied Britton's Petition for Rehearing April 11, 2002. Although Britton initiated an appeal in this court by seeking an extension of time to file a Petition for Writ of Certiorari, no Petition was ever filed. As a result, this court ordered the certiorari proceeding closed July 2, 2002. The court of appeals subsequently ordered its mandate making its decision final on July 12, 2002.

608

no compelling reason to read 15–11–1106(2) as an exception to the finality of the quiet title determination made in *Argus I. Id.* The court of appeals concluded that Argus' claims were barred by res judicata and upheld the district court's entry of summary judgment. *Id.*

We granted certiorari.

## II. Analysis

As an initial matter, we clarify the terminology used in our analysis. This court uses the terms "claim preclusion" and "issue preclusion" rather than "res judicata" and "collateral estoppel." *See Farmers High Line Canal and Reservoir Co. v. City of Golden,* 975 P.2d 189, 196 n. 11 (Colo.1999). In prior opinions, we have used the phrases interchangeably, however, as noted by the United States Supreme Court in *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), use of the phrases "res judicata" and "collateral estoppel" can lead to confusion because "res judicata" is commonly used as an overarching label for both claim and issue preclusion. *Id.* Although the parties in their briefs and both courts below discuss the preclusive effect of *Argus I* as "res judicata," we clarify the issue as one clearly giving rise to "claim preclusion."

We begin our analysis with a discussion of common law claim preclusion and the finality of quiet title actions to explain that Argus' statutory reformation claim is barred absent a statutory exception. Next, we discuss section 15–11–1106(2) and consider whether the General Assembly intended to abrogate common law claim preclusion. We conclude that the General Assembly lacked the clear intent necessary to abrogate the common law doctrine and hold that section 15–11–1106(2) does not provide an exception to claim preclusion.

■ We review the court of appeals' decision upholding the district court's entry of summary judgment and its interpretation of section 15–11–1106(2) de novo. *See Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004).

## A. Claim Preclusion

■ Claim preclusion works to preclude the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not. *Lobato v. Taylor,* 70 P.3d 1152, 1165 (Colo.2003); *Cruz v. Benine,* 984 P.2d 1173, 1176 (Colo.1999). The doctrine protects "litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Lobato,* 70 P.3d at 1165–66 (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). For a claim in a second judicial proceeding to be precluded by a previous judgment, there must exist: (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions. *Cruz,* 984 P.2d at 1176.

■ With respect to the first two elements of this test, there is no question that the judgment in *Argus I* is final and that this action, *Argus II,* involves the same parcel of land and same agreement as the subject matter of litigation in *Argus I.* In addition, although Argus was not named as a party in *Argus I,* we agree with the court of appeals that the fourth element is satisfied because Argus is a successor in interest to Britton. *Argus,* 97 P.3d at 217. Not only did Britton and Partners file its cross-complaint for quiet title in *Argus I* on behalf of their successors in interest, but in litigation where the subject matter is property, successors in interest to that property are in privity of estate with the parties to the litigation and are ordinarily bound by the judgment. *Id.; see also Green v. Chaffee Ditch Co.,* 150 Colo. 91, 99, 371 P.2d 775, 779 (1962) ("When a judgment establishes the law of the case, ... it becomes a rule of property as to the subject matter of the suit, and passes with it to all persons subsequently claiming under such parties." (internal citations and quotations omitted)). Because the remaining third element—identity of claims for relief—is not as easily explained, we discuss it in more detail.

■ In analyzing whether there exists identity of claims for relief, we have held that the inquiry does not focus on the specific

claim asserted or the name given to the claim. *Farmers High Line Canal*, 975 P.2d at 199. Instead, the "same claim or cause of action requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies." *Id.* (citing *State Eng'r v. Smith Cattle, Inc.*, 780 P.2d 546, 549 (Colo. 1989)). In addition, claim preclusion also bars a litigant from splitting claims into separate actions because once judgment is entered in an action it "extinguishes the plaintiff's claim ... includ[ing] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Restatement (Second) of Judgments* § 24 (1982). Thus, claim preclusion bars relitigation not only of all claims actually decided, but of all claims that might have been decided if the claims are tied by the same injury. *Farmers High Line Canal*, 975 P.2d at 199.

In *Argus I*, Argus' predecessor in interest, Britton, answered and sought to contest the quiet title claim asserted by the Authority. In addition, Britton asserted a cross-claim also seeking quiet title to the parcel.

Quiet title actions are governed by C.R.C.P. 105. In a quiet title action, the relief sought is clear title to the subject property by means of a complete adjudication of the rights of all parties to the action. C.R.C.P. 105(a); *Hopkins v. Bd. of County Comm'rs of Gilpin County*, 193 Colo. 230, 236, 564 P.2d 415, 420 (1977). A decree declaring title in any party "grants full and adequate relief so as to completely determine the controversy and enforce the rights of the parties." C.R.C.P. 105(a). Given the finality of a quiet title action and the grant of "full relief" afforded by the court in such an action, it is incumbent upon all parties to raise any claims, issues or defenses that may affect the court's adjudication of rights in the subject property as all rights are to be determined in a single action. When the court in *Argus I* entered its decree quieting title in the Authority, the decree was a complete adjudication of the rights of all parties in the action.

In support of Argus' subsequent statutory reformation claim in *Argus II*, Argus argued that although its interest was found to violate the rule against perpetuities, section 15–11–1106(2) required reformation of the agreement such that it would bring the agreement within the limits of the rule against perpetuities to best represent the intent of the parties when they entered into the agreement. The reformation claim is an alternative theory for Argus to assert its rights in the parcel under the same agreement that was the subject of the quiet title adjudication in *Argus I*. That is, because the court in *Argus I* found the property interest under the agreement void, Argus now offers a new theory in which the court in *Argus II* can reform the same agreement, circumvent the common law rule against perpetuities and pronounce a valid interest in the parcel held by Argus.

Because Britton and the Authority sought quiet title in *Argus I*, it was incumbent upon each party to raise any claims, issues and defenses it may have had that would affect the adjudication of rights in the parcel. As such, not only *could* Britton have raised its statutory reformation claim as affecting its rights in the parcel, but Britton *should* have raised the claim because the claim directly involved the adjudication of its rights in the parcel as part of the quiet title claim.[4] Quiet title actions are intended to grant full relief to the party asserting an interest in the property and, if that interest is based upon a theory of reformation, such a claim must be raised. Here it is apparent that the statutory reformation claim ultimately seeks the same relief—title to the parcel under the agreement. The claim also seeks redress for the same alleged injury—deprivation of an interest in the parcel. Accordingly, there is

---

4. We recognize that the rule against perpetuities was not raised in *Argus I* in either party's complaint or answer. However, the issue was raised on motion for summary judgment as grounds for voiding as a matter of law the interest in the parcel claimed by Britton, Partners and, their successor in interest, Argus. Given the ability of parties to plead alternative relief and liberally amend pleadings, Argus' statutory reformation claim could have been raised. See C.R.C.P. 15; *Super Valu Stores, Inc. v. District Court*, 906 P.2d 72, 77 (Colo.1995) (rule "reflects a liberal policy of amendment and encourages trial courts to look favorably on requests to amend").

sufficient identity of claims between the quiet title claims in *Argus I* and the statutory reformation claim asserted in *Argus II* to satisfy the third element of claim preclusion.

Because each element of claim preclusion is present in Argus' statutory claim for reformation in *Argus II* as it relates to the quiet title claims in *Argus I*, we agree that the claim is barred by the common law doctrine of claim preclusion unless we accept Argus' contention that this court should recognize a statutory exception to the doctrine of claim preclusion in section 15–11–1106(2).

## B. Statutory Exception to Claim Preclusion

In support of its contention that section 15–11–1106(2) creates an exception to claim preclusion, Argus argues that the intent of the General Assembly to abrogate the common law doctrine of claim preclusion can be found in both the plain language of the statute and through the remedial intent of the Act. Because we find no clear intent by the General Assembly to abrogate the common law doctrine of claim preclusion, we find no exception in section 15–11–1106(2).

In 1991, the General Assembly adopted the Act as part of several revisions and additions to Colorado's Probate Code. Ch. 252, sec. 9, §§ 15–11–1101 to –1107, 1991 Colo. Sess. Laws 1442, 1445. The Act was closely modeled on the Uniform Statutory Rule Against Perpetuities Act (USRAPA) authored by the National Conference of Commissioners on Uniform State Laws. 2A Krendl, *Colorado Methods of Practice* § 72.27 (4th ed.1998). The express intent of the Act is to "make uniform the law ... among states" and to "supersede[ ] the rule of the common law known as the rule against perpetuities." § 15–11–1107(1) and (2), C.R.S. (2004).

Section 15–11–1106 prescribes how to apply the statute. The provision distinguishes between nonvested property interests created before and after the effective date of the Act. Section 15–11–1106(2) applies to non-vested interests created before May 31, 1991. The parties agree that because the agreement was executed before May 31, 1991, section 15–11–1106(2) applies to the nonvested interest in the parcel created by the agreement.[5] Accordingly, it is this section that Argus relies upon to argue an exception to claim preclusion.

Section 15–11–1106(2) allows for an interested party to petition a court to reform the disposition of a nonvested property interest where that interest is determined in a judicial proceeding to violate the rule against perpetuities:

> If a nonvested property interest or a power of appointment was created before May 31, 1991, and is determined in a judicial proceeding, commenced on or after May 31, 1991, to violate this state's rule against perpetuities as that rule existed before May 31, 1991, a court upon the petition of an interested person shall reform the disposition by inserting a savings clause that preserves most closely the transferor's manifested plan of distribution and that brings that plan within the limits of the rule against perpetuities applicable when the nonvested property interest or power of appointment was created.

Argus and the Authority construe the section differently. Argus contends that the plain language of the provision allows an interested party to bring a new action for reformation after a judicial determination that a property interest violated the common law rule against perpetuities. Given the equitable and remedial nature of the Act and Argus' contention that the plain language of section 15–11–1106(2) permits a second action, Argus argues the provision creates an exception to the doctrine of claim preclusion. The Authority contends that section 15–11–1106(2) does not provide that a reformation claim may be raised in a subsequent proceeding and therefore section 15–11–1106(2) does not authorize an interested party to file a second lawsuit in derogation of claim preclu-

---

5. For the purpose of discussing the impact of section 15–11–1106(2) on the doctrine of claim preclusion, the Authority acknowledges that the provision provides for judicial reformation of contracts executed prior to May 31, 1991. The

Authority does not concede, nor do we address, the arguments it raised in the trial court that application of the statute is unconstitutional and, even if found constitutional, the agreement should not be reformed as proposed by Argus.

sion. Because there is no evidence of the General Assembly's intent to abrogate the common law doctrine of claim preclusion, the Authority argues that this court should not construe the provision as such. We agree with the Authority.

■ "[S]tatutes may not be interpreted to abrogate the common law unless such abrogation was clearly the intent of the General Assembly." *Preston v. Dupont,* 35 P.3d 433, 440 (Colo.2001); *Robinson v. Kerr,* 144 Colo. 48, 52, 355 P.2d 117, 119–20 (1960). Absent such clear intent, statutes must be deemed subject to the common law. *Robbins v. People,* 107 P.3d 384, 387 (Colo.2005) (citing *Bradley v. People,* 8 Colo. 599, 604, 9 P. 783, 786 (1886)). The statute purporting to abrogate the common law may do so expressly or by clear implication, however, under either circumstance, the abrogation must be more than an "imagined connection." *Preston,* 35 P.3d at 440. In our analysis, "we will not strain to give language other than its plain meaning." *Id.* (citations omitted).

In this case, the common law to which Argus seeks a statutory exception is the common law doctrine of claim preclusion. The doctrine of claim preclusion predates our modern legal system. Friedenthal et al., *Civil Procedure* § 14.2 (2d ed.1993). The doctrine was established under Roman law as a means of terminating controversy by judgment of the court. *Id.* The doctrine was integrated into English common law by the early 1100s and eventually incorporated into our American legal system. *Id.*

Not only is claim preclusion part of Colorado common law, but the doctrine is fundamental to the operation of the judicial system. It is well-recognized that claim preclusion confirms the finality of judg-

ments and, in doing so, preserves the integrity of the judicial system. *Lobato,* 70 P.3d at 1166 (citing Wright, Miller & Cooper, *Federal Practice and Procedure* § 4403, at 23 (2d ed.2002)). That is, "judicial integrity would be compromised and the value of and respect for court rulings would be seriously devalued if one matter could be easily relitigated with inconsistent results." *Id.* at 1166. Moreover, by preserving the integrity of the judicial system, claim preclusion encourages reliance on adjudication. *Rantz v. Kaufman,* 109 P.3d 132, 138, 2005 WL 452056, *8 (Colo. Feb.28, 2005).

Given the history and vitality of the doctrine as a foundation for the finality of litigation and a fundamental basis for confidence in our system of jurisprudence, judicially-recognized exceptions to claim preclusion are extremely rare.[6] *Id.* Similarly, statutory provisions creating exceptions to claim preclusion must do so in a manner that is undoubtedly clear. These principles are particularly significant in the context of an attempt to create an exception to the preclusive effect of quiet title decrees.

Section 15–11–1106(2) creates the possibility for an interested party to "petition" a court to reform the disposition of a nonvested property interest where that interest "is determined in a judicial proceeding ... to violate this state's rule against perpetuities." § 15–11–1106(2). Although the Probate Code defines "petition" as "a written request to the court for an order after notice," section 15–10–201, C.R.S. (2004), nothing in the Act or section 15–11–1106(2) provides that an interested party may petition the court for reformation in a subsequent action. The statute simply states that an interested party may petition the court when it is determined

6. In *Atchison v. City of Englewood,* 180 Colo. 407, 413, 506 P.2d 140, 143 (1973), we explained that "we confine ourselves here to .... a declaratory judgment action," and allowed a subsequent action for reformation after the plaintiffs were unsuccessful in a declaratory judgment proceeding. We held that, "a declaratory judgment is conclusive as to the questions raised by the parties and passed upon by the court .... however, [it] does not constitute an absolute bar to subsequent proceedings where the parties are seeking other remedies ...." *Id.* at 413, 506 P.2d at 143. A declaratory judgment is a limited

proceeding in which the court determines the rights of parties that depend on the interpretation of some written instrument. *Toncray v. Dolan,* 197 Colo. 382, 384, 593 P.2d 956, 957 (1979). In marked contrast, the very purpose of a quiet title action is to determine *all* rights to the property, regardless of the origin or source of the rights, in a single action. *Keith v. Kinney,* 961 P.2d 516, 519 (Colo.App.1997) (citing *Scott v. Sullivan,* 79 Colo. 173, 244 P. 466 (1926) and *Empire Ranch & Cattle Co. v. Herrick,* 22 Colo. App. 394, 124 P. 748 (1912)).

in "a judicial proceeding" that a nonvested property interest violates the rule against perpetuities. § 15–11–1106(2).

Argus contends that the plain language of section 15–11–1106(2) does not require that a reformation claim be brought in the same proceeding where a court determines that a property interest is void under the rule against perpetuities and instead permits a claim to be raised in either the same judicial proceeding or a subsequent one. As such, Argus contends that because section 15–11–1106(2) permits the reformation claim to be raised in a subsequent proceeding, the General Assembly intended to abrogate the common law doctrine of claim preclusion by clear implication. We disagree because there is no clear intent to abrogate the common law doctrine of claim preclusion that would authorize a litigant to state a reformation claim that is otherwise barred.

Section 15–11–1106(2) does not mention claim preclusion[7] or specify that reformation may be pursued in a subsequent judicial proceeding. The National Conference of Commissioners on Uniform State Laws comments on USRAPA state that "the equitable power to reform [as established by the reformation provision] would typically be exercised in the same judicial proceeding in which the invalidity is determined." *Unif. Statutory Rule Against Perpetuities Act* § 5 cmt. (amended 1990), 8B U.L.A. 285, 289 (2001). While Argus reads this comment as implying the intent of the authors of USRAPA and the General Assembly to authorize reformation claims in a subsequent judicial proceeding, if any intent is to be derived from this comment, it is the intent of the authors that reformation claims should be raised in the same proceeding in which a property interest is deemed invalid. It in no way evidences any intent by the authors of USRAPA, or the General Assembly, to permit reformation claims in derogation of common law claim preclusion.

In furtherance of its argument, Argus attempts to analogize the statutory scheme established by the Act to the limited claim preclusion exception recognized by the *Restatement (Second) of Judgments* that permits "claim splitting." Argus specifically refers to Section 26(1)(d) which provides:

> [T]he general rule [precluding claim splitting] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant ... [when] it is the sense of the [statutory or constitutional] scheme that the plaintiff should be permitted to split his claim.

Because Argus contends that section 15–11–1106(2) does not prohibit a second proceeding, it asserts that "it is in the sense" of the Act that Argus should be permitted to split its claims in *Argus I* and *Argus II*.

■ This argument fails because permitting claim splitting or acknowledging any exception to claim preclusion under these circumstances would substantially undermine the purpose of quiet title. "The manifest intent of [quiet title] is to provide a complete adjudication of the rights of all parties," *Hopkins,* 193 Colo. at 236, 564 P.2d at 420 (internal quotations omitted), and to grant "full and adequate relief so as to completely determine the controversy and enforce the rights of the parties." C.R.C.P. 105. The provisions of C.R.C.P. 105 are designed to provide certainty and security to quiet title proceedings by "resolving competing claims that exist at a particular time, and this purpose would be frustrated were the rule to permit piecemeal litigation of claims." 5 Krendl, *Colorado Methods of Practice, Civil Rules Annotated* § 105.2 (3d ed.1998). If we were to permit an exception to the finality of quiet title decrees, it would defeat the purpose of the action and place uncertainty on the legitimacy of quieted title. The statute does not address when reformation claims can be made and from this absence it cannot be inferred that the Act was intended to create an exception to the doctrine of claim preclusion and undermine the finality and purpose of quiet title actions.

7. The only common law doctrine that the Act expressly abrogates is the common law rule against perpetuities. *See* § 15–11–1107(2) ("This [Act] supersedes the rule of the common law known as the rule against perpetuities.").

Argus next contends that the remedial purpose of the Act evidences the General Assembly's intent to provide an exception to claim preclusion. Specifically, Argus argues that the intent of the Act to relieve parties of the onerous burdens of the rule against perpetuities "could not be more clear" and that this remedial intent, in essence, serves as a basis for finding an exception to common law claim preclusion. We agree that the remedial intent of the Act is clear and where an interested party raises a claim under the Act, specifically section 15–11–1106(2), a court should afford that party every opportunity to argue the merits of the claim and provide reformation relief from the harshness of the rule against perpetuities. This opportunity, however, must come within the limits of judicial procedure and the common law doctrines that constrain our judicial system, including claim preclusion, absent any clear legislative intent or clear statutory implication to the contrary. Argus' argument fails because it misconstrues the clear intent of the General Assembly to abrogate the common law rule against perpetuities as the General Assembly's intent to abrogate the common law doctrine of claim preclusion. Applying the remedial intent of the Act as a means of abrogating the common law, especially common law as fundamental as claim preclusion, is insufficient evidence of the General Assembly's clear intent. Under the circumstances of this case, the opportunity to raise the statutory reformation claim was during the quiet title proceeding in *Argus I*.

For these reasons, we find no intent to abrogate the common law doctrine of claim preclusion in the adoption of the Act. If the General Assembly intended to do so, we find it could have done so more clearly.

### III. Conclusion

Because there is no clear intent by the General Assembly to abrogate the common law doctrine, we find no exception to claim preclusion in section 15–11–1106(2). Accordingly, we affirm the decision of the court of appeals and the trial court that Argus' statutory reformation claim is barred as a matter of law by the doctrine of res judicata.

Justice KOURLIS dissents, and Justice RICE and Justice COATS join in the dissent.

Justice KOURLIS dissenting.

The majority holds that section 15–11–1106(2), C.R.S. (2004), does not permit Argus to file a statutory reformation claim in a subsequent judicial proceeding because of the operation of the doctrine of claim preclusion. Because I read the plain language of the statute as creating an exception to that doctrine, I respectfully dissent.

At issue is a 1990 real estate agreement whereby the E–470 Highway Authority ("Authority") agreed to purchase the outer parcels of Britton's land. Britton agreed, upon closing, to donate the interior parcel "for the purpose of constructing the Public Highway." This donation was described as a conditional dedication. Pursuant to the parties' agreement, the Authority would offer the donated portion back to Britton if it was not needed for highway purposes. The Authority did not use the interior parcel for the construction of E–470. Rather than returning the property, the Authority filed an action for declaratory judgment and quieting title against Britton in 2000. The trial court entered summary judgment in favor of the Authority holding that Britton's interest was invalid because it violated the rule against perpetuities. The trial court's order quieting title to the property in the Authority was affirmed on appeal. *See E–470 Highway Auth. v. Argus Real Estate Partners, Inc.,* 70 P.3d 481 (Colo.App.2002).

In June 2002, Argus, an assignee of Britton's interest, filed a petition requesting reformation of the agreement to convey the property under section 15–11–1106(2). The trial court again entered summary judgment in favor of the Authority on the grounds that Argus' claim for reformation was barred by res judicata—hereinafter claim preclusion.

The question before us today is whether the Colorado Statutory Rule Against Perpetuities Act, section 15–11–1101 et seq., C.R.S. (2004), creates an exception to the common law defense of claim preclusion. I believe that in this case it does. The plain language of the statute provides that the court shall reform the disposition of a nonvested interest

if it has been determined to violate the rule against perpetuities. This language is without limitation. Additionally, under *Atchison v. City of Englewood,* 180 Colo. 407, 506 P.2d 140 (1973), the trial court's entry of summary judgment in *Argus I* is arguably not preclusive of the statutory reformation claim.

## I. Statutory Interpretation

In construing a statute, it is our primary purpose to ascertain and give effect to the intent of the legislature. *Charnes v. Boom,* 766 P.2d 665, 667 (Colo.1988). To that end, we look first to the language of the statute itself. *People v. Dist. Court,* 713 P.2d 918 (Colo.1986). Words and phrases are given effect according to their plain and ordinary meaning. *Id.* In line with that principle, we have similarly concluded that a statute does not abrogate the common law unless such abrogation was clearly the intent of the General Assembly. *Preston v. Dupont,* 35 P.3d 433, 440 (Colo.2001), *Robinson v. Kerr,* 144 Colo. 48, 52, 355 P.2d 117, 119–20 (1960).

### A. Rule against perpetuities; Background

The common law rule against perpetuities was a landmine planted in real property law that imploded upon the unwary. It vitiated interests that the parties had every intention of creating. Colorado's Statutory Rule Against Perpetuities Act modeled after the Uniform Statutory Rule Against Perpetuities (1987) (amended 1990), seeks to make interests valid *whenever possible* and to give effect to the intent of the donor, even if the court must reform the instrument to carry out that intent. Krendl, 2A *Colorado Methods of Practice* § 72.1 at 115–16; § 72.28 at 160–61 (4th ed.1998). Because the statutory rule against perpetuities was intended to mitigate the harshness of the common law rule, it is more limited in scope than its common law predecessor. The statutory rule abolishes the common law rule that automatically voided interests that may not vest within a life in being plus 21 years, and replaces it with a "wait and see" principle for instruments drafted after May 31, 1991. § 15–11–1102(b).

### B. Interests created before May 31, 1991

The provision we are concerned with today provides that where a nonvested property interest created before May 31, 1991 has been determined in a judicial proceeding to violate the rule against perpetuities, "a court upon the petition of an interested person *shall* reform the disposition." § 15–11–1106(2) (emphasis added); *see also,* Uniform Statutory Rule Against Perpetuities (providing that the court "may reform" whereas Colorado rule provides "shall reform").

## II. Claim Preclusion

The doctrine of res judicata or claim preclusion generally holds that an existing judgment is conclusive of the rights of the parties in any subsequent suit on the same claim. *Michaelson v. Michaelson,* 884 P.2d 695 (Colo.1994). It applies to bar subsequent actions when the initial proceeding produces a final judgment, and when identity of subject matter, identity of claims for relief and identity of parties exist as to both claims. *City & County of Denver v. Block 173 Assocs.,* 814 P.2d 824 (Colo.1991). It not only bars issues actually decided, but also any issues that should have been raised in the first proceeding, but were not. *Id.*

Although exceptions to the doctrine may be rare, they are not wholly absent from our jurisprudence. *See* Restatement (Second) of Judgments § 33 cmt. c (1982) (a declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced, including counterclaims by a defendant that, in any other type of action, would be barred by compulsory counterclaim rules). Colorado courts have held that a claim is not barred by principles of claim preclusion when the claim is not ripe or mature at the time the first case is pleaded.

In *Atchison,* we addressed whether a declaratory judgment was res judicata as to the vendor's action seeking reformation of a purchase agreement. 180 Colo. 407, 506 P.2d 140. Atchison had sold certain property to the City, reserving a preemptive right to repurchase the property. In time, the City leased the property to Martin Marietta Corporation with an irrevocable

option to purchase the property during the life of the lease. Atchison then brought an action for declaratory judgment. On summary judgment the trial court ruled that the preemptive right to repurchase was void as a violation against the rule of perpetuities. Atchison filed a second action against the City and Martin Marietta seeking reformation. The trial court granted the City's motion for summary judgment on the ground that the first action was res judicata. We reversed, holding that "a declaratory judgment does not constitute an absolute bar to subsequent proceedings where the parties are seeking other remedies." *Id.* at 414, 506 P.2d 140. We explicitly distinguished *Atchison* from *Lane v. Page*, 126 Colo. 560, 251 P.2d 1078 (1952), where the plaintiffs were granted the relief sought and therefore were barred from bringing a second action for other relief. However, Atchison did not prevail in his initial action before seeking other remedies. Thus, we held that *Lane* did not apply. With respect to Atchison's failure to raise reformation in the initial action we noted:

> It seems to us a bit incongruous to require that, when [plaintiff] takes this action he must also plead all sorts of other remedies in order to protect himself in the event that he loses as to the validity of the contract. We do not believe that such a requirement is within the spirit of our rule or the statute.

*Id.* at 413–414, 506 P.2d at 143. Although the trial court here resolved the ultimate issue of quiet title, and not just the declaratory judgment claim, I find the principle expressed in *Atchison* to have application here.

Clearly, Argus could have had the foresight to raise a statutory reformation claim in *Argus I*, but it was not required to do so. At the time the case was before the trial court, no court had yet determined that the agreement violated the rule against perpetuities. Thus, a request for reformation under section 15–11–1106 was not ripe. Pursuant to C.R.C.P. 13(a) a party need not assert a counterclaim if it has not matured at the time of the pleading. *See In re Estate of Krotiuk*, 12 P.3d 302 (Colo.App.2000). Under the plain language of the statute, a petition for

reformation would necessarily mature at a time *after* judicial determination that the instrument violates the rule against perpetuities. There is no requirement that a court must reform the instrument in the same action in which it determines that the interest violates the Rule.

Consideration of the statutory rule against perpetuities' impact on property interest created after May 1991 reveals that the donor would have the benefit of the "wait and see" doctrine. In construing a statute, we must presume that a just and reasonable result is intended. § 2–4–201, C.R.S. (2004). It cannot be presumed that the legislature intended to provide greater protections for property interests created after the enactment of the statute than for those in existence at the time of its creation. Furthermore, we must refrain from construing a statute so as to reach a result that has irrational consequences. *State Bd. of Med. Examiners v. Saddoris*, 825 P.2d 39 (Colo.1992).

Finally, we have recognized that the application of the rule against perpetuities should be flexible. *See Cambridge Co. v. East Slope Invs. Corp.*, 700 P.2d 537 (Colo.1985). In *Cambridge*, we reversed the judgment of the court of appeals setting aside a condominium owner's conveyance of real property as void under the rule against perpetuities. We held that "the rule against perpetuities is not merely a technical rule." *Id.* at 540. Rather, where the rule's purpose will not be served, it should not be mechanically applied. *Id.* (citing *Crossroads Shopping Ctr. v. Montgomery Ward & Co.*, 646 P.2d 330, 332 (Colo. 1981); *Southeastern Penn. Transp. Auth. v. Philadelphia Transp. Co.*, 426 Pa. 377, 233 A.2d 15 (1967); Restatement (First) of Property § 395 cmt. a (1936)).

### III. Conclusion

While there are public policy concerns inherent in the recognition of such an exception to the doctrine of claim preclusion, it is not this court's task to wrestle with those issues. Rather, it is the General Assembly that must address such concerns through legislation. The only declaration of public policy that we construe today is a statute that expresses clear disfavor towards strict

**616**

application of the rule against perpetuities. Allowing reformation here would be consistent with the legislative intent and would have no impact other than to interests created pre–1991 which have been adjudged to violate the rule against perpetuities.

For all of the above reasons, I respectfully dissent and would reverse the court of appeals' opinion and allow reformation of the agreement.

I am authorized to state Justice RICE and Justice COATS join in the dissent.