25CA0650 Roley v Eisele 06-25-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0650
El Paso County District Court No. 24CV31305
Honorable David Prince, Judge

Julie Ann Roley,

Plaintiff-Appellee,

v.

Warren Eisele,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE FREYRE
Kuhn and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

Frederick W. Newall, Colorado Springs, Colorado, for Plaintiff-Appellee

Mark Anthony Law, Mark Anthony Barrionuevo, Colorado Springs, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Warren Eisele, appeals the district court's judgment partitioning real property that he owned with plaintiff, Julie Ann Roley.  We affirm the judgment.

## I.     Background

¶ 2     Eisele and Roley were romantically involved for approximately eight years, but they never married.  In 2019, they moved into a Colorado Springs property.  Eisele purchased the property using proceeds from the sale of his previous property and $13,776.79 supplied by Roley.  At the time, the property was titled solely in Eisele's name.  In 2021, Eisele executed a quitclaim deed transferring an interest in the property to Roley.  The deed established Eisele and Roley as joint tenants.

¶ 3     In 2021 Eisele purchased a 2017 Mazda CX-5 (the vehicle).  Eisele titled the vehicle in both their names.

¶ 4     In 2023, Eisele filed a petition for declaratory judgment requesting quiet title to the property and the vehicle pursuant to section 13-51-101, C.R.S. 2025, C.R.C.P. 57, and C.R.C.P. 105 (the 2023 litigation).  Eisele alleged that he and Roley had entered into two oral contracts.  Under the first oral contract, Eisele would relinquish an interest in the property to Roley if the two remained in

1

a romantic, nonmarital relationship for the remainder of their lives. Under the second oral contract, Eisele would pay for the maintenance, oil changes, gas, costs, and repairs for the vehicle — and would allow Roley to drive the vehicle — if the two remained together in a romantic, nonmarital relationship. Eisele alleged that Roley breached both oral contracts. Roley denied both the existence of the oral contracts and that she breached them. Eisele also alleged that Roley had engaged in wrongdoing, including fraud. He asserted that Roley owed him the value of the vehicle because she had taken possession of it without his permission.

¶ 5 Following a bench trial, the district court clarified that Eisele claimed a breach of contract and that he requested alteration of the parties' rights to the property and vehicle. The district court found that Eisele had provided "no substance that the Court can plausibly analyze to determine whether an offer was actually made and whether it was accepted," nor any evidence that an oral contract existed. Therefore, the rights of the parties to the property and the vehicle constituted those reflected in the record title documents for each. Accordingly, Eisele and Roley held the property as joint

tenants and were co-owners of the vehicle. Neither party appealed the court's decision.

¶ 6    In 2024, Roley commenced this action and requested a partition of the property pursuant to section 38-28-101, C.R.S. 2025. Roley argued that she and Eisele had made no agreements as to the disposition of the property and that because it was a single-family residence, equitable division was impractical. She therefore requested that the two agree to a mutually acceptable real estate agent to effectuate a sale and partition. Roley asserted that Eisele had continued to reside at the property since November 15, 2023.

¶ 7    In response, Eisele claimed that the court must "assign a value to the property and then allocate value between [Roley] and [Eisele] in proportion with their title interests." He argued that "[a]n accounting of each parties' respective contributions toward the property, such as acquiring the property and paying taxes, to reach an equitable result must first occur." Eisele then stated that he contributed the "vast majority of the monies to purchase the residence," installed solar panels, painted the residence, and paid entirely for all other significant improvements. Therefore, Eisele

3

argued, it would be manifestly prejudicial to him to sell the property. Instead, he would pay Roley "what she was owed." Eisele requested that Roley's contributions, such as the $13,776.79 Roley contributed to purchase the property, be treated as gifts and that Roley be entitled only to her monetary contributions to the property and 2.7% of the equity increase in the property, which amounted to less than 50% of the property's value.

¶ 8 Roley responded that Eisele's request for more than 50% of the value of the property had been decided in the 2023 litigation (where Eisele had requested a declaratory judgment). Therefore, Eisele's claims were barred by collateral estoppel and res judicata. Roley argued that the only adjustments remaining to the parties' 50-50 ownership were those after the ruling in the 2023 litigation.

¶ 9 In February 2025, Roley then filed a motion for declaratory judgment.[1] She argued that Eisele "had his day in court arguing legal or equitable off-sets upon Roley's joint ownership which was heard and ruled upon." She further argued that res judicata and collateral estoppel barred Eisele's request for an equitable offset

---

[1] Roley's motion for declaratory judgment was joined with the partition action.

4

because it constituted a re-litigation of his contentions in the 2023 litigation.

¶ 10    Eisele responded that claim preclusion did not apply because the issues in this case were not identical to the issues litigated in the prior proceeding because the court "declined to address the issues of partition." Moreover, there was no final judgment on the merits of apportioning the property of the parties in the 2023 litigation. Eisele asserted that "because [Roley] owns a small percentage of the [property] and no percentage of the [vehicle], [Eisele] can refinance the [property] and make [Roley] whole pursuant to the decision of the Court after a partition hearing occurs."

¶ 11    In her reply, Roley argued that Eisele had previously presented the relative contributions of the parties and argued that he be awarded the vast majority, if not all, of the value of the house, the same argument he was making here. Further, she argued that because Eisele ousted her from the property on November 14, 2023, she was entitled to an offset from April 2024 to the present.

¶ 12    In a pretrial ruling, the district court found that the claims for an "accounting," based on alleged actions, including fraud, or

contributions made before the ruling in the 2023 litigation, were precluded. Claims to adjust ownership based on events occurring after the 2023 litigation would be permitted. In its ruling, the district court found that Eisele was attempting to argue that an accounting in partition could be used to revisit allegations he made in the 2023 litigation to reset the ownership shares declared in that lawsuit. More specifically, the court found,

> The basic injury being alleged by Eisele [in the 2023 litigation] is the perceived and argued loss of his unequal contribution to the two assets. This was one of Defendant Eisele's core allegations and arguments in the 2023 case and is his core allegation in the current case — that, by way of example, he should have a greater than 50% ownership of the assets because he contributed gutters, paint, money, etc.

¶ 13    In April 2025, following a bench trial addressing the partition of the property and vehicle, the court rejected each party's recommended method of partition and implemented the statutory remedy of a public sale. The district court found that Eisele had again asked the court to adjust the parties' respective ownership percentages based on events that preceded the declaration of equal

6

ownership entered in the 2023 litigation. The court declined to address these arguments.

¶ 14     Concerning Roley's argument that she was ousted from the property, the district court found the following:

- In El Paso County Case No. 23C4046, Eisele filed a protection order.

- Both parties agreed that this was the timeframe in which Roley stopped residing in the house.

- The ultimate ruling in Case No. 23C4046 was that Eisele's request for a protection order was denied.

- Still, both parties agreed that the case or events surrounding it prevented Roley from occupying the property thereafter.

- Eisele pointed to Case No. 23C4046 as demonstrating that Roley was abusive and therefore could not be said to have been ousted.

- The minute order in Case No. 23C4046 reflected that the judge found that "prong one" was established even though the request for a protection order was denied.

¶ 15    The district court concluded that it did not need to address whether the court's finding in Case No. 23C4046 provided sufficient evidence to determine whether Roley was ousted from the property. The district court continued:

> This argument is presented in support of a request to account for the unequal distribution of the benefits of ownership of the property since the decree entered in April of 2024 (one year ago). There is no dispute that [Eisele] has resided at the property during this time. There is no dispute that [Roley] has not resided at the property during this time frame. There is no dispute that [Roley] has not resided at the property despite her 50% ownership during that time. Thus, [Eisele] has enjoyed a significant benefit of ownership since the decree of equal ownership that [Roley] has not enjoyed. The Court does not find the evidence to be sufficient to persuade the Court that this is an equitable result. The Court finds and concludes that equity is served by awarding [Roley] an offset for [Eisele] having occupied the property to the exclusion of [Roley] for the one year period since the declaration of equal ownership.

¶ 16    The district court ordered the property to be sold at a public sale. The court found that Roley was owed a gross payment of $23,400 beyond her 50% share of the proceeds as of the end of April 2025, and that Eisele was owed a gross payment of $12,291

8

beyond his 50% share of the proceeds as of the end of April 2025 resulting in a net payment of $11,109 owed to Roley.

¶ 17 On appeal, Eisele contends the district court erred by (1) not permitting him to present his affirmative defense of fraud; (2) precluding his claim for an equitable contribution determination regarding his contributions to the acquisition of the property and the vehicle; (3) not making any findings regarding ouster; and (4) awarding rental monies to Roley. We disagree and affirm the judgment.

## II.  Claim Preclusion

¶ 18 Eisele contends that the district court erred in failing to consider his affirmative defense of fraud and in precluding his claim for an equitable contribution determination concerning the property and vehicle. Because we conclude that claim preclusion applies to both contentions, we disagree.

### A.  Standard of Review and Applicable Law

¶ 19 We review de novo a judgment entered on the basis of claim preclusion. *See Loveland Essential Grp., LLC v. Grommon Farms, Inc.,* 2012 COA 22, ¶ 13. Claim preclusion bars the relitigation of matters that have already been decided, or could have been raised,

9

in a prior proceeding. *Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005). Claim preclusion applies only when "(1) the judgment in the prior proceeding was final; (2) the prior and current proceedings involved identical subject matter; (3) the prior and current proceedings involved identical claims for relief; and (4) the parties to the proceedings were identical or in privity with one another." *Meridian Serv. Metro. Dist. v. Ground Water Comm'n*, 2015 CO 64, ¶ 36. "In the broadest sense, claim preclusion prevents the perpetual [relitigation] of the same claim or cause of action. The goal of the doctrine is to promote judicial economy by barring a claim litigated in a prior proceeding from being litigated again in a second proceeding." *Foster v. Plock*, 2017 CO 39, ¶ 12.

## B. Analysis

### 1. Finality of Judgment

¶ 20 To satisfy the first claim preclusion factor, there must be finality of the judgment. *Argus Real Est., Inc.*, 109 P.3d at 608. As the district court found in its pretrial order, the rulings in the 2023 litigation were entered following full litigation and trial. Further, no postjudgment challenges were made in the trial or appellate court

and those deadlines have expired. Therefore, we conclude this factor is satisfied.

## 2. Identity of Subject Matter

¶ 21    The second factor requires proof of identical subject matter. *Argus Real Est., Inc.*, 109 P.3d at 608. Because the subject matter in the 2023 litigation and this case arises from a dispute regarding the same property and vehicle, we conclude that this factor is satisfied. *See, e.g., Argus Real Est., Inc.*, 109 P.3d at 608-09 (same parcel of land and same agreement as the prior litigation sufficient for identity of subject matter); *City & County of Denver v. Block 173 Assocs.*, 814 P.2d 824, 831 (Colo. 1991) (same land transaction and same underlying facts generate identity of subject matter), *overruled on other grounds by Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51.

## 3. Identity of Claims for Relief

¶ 22    The third factor requires identical claims for relief between the two cases. *Argus Real Est., Inc.,* 109 P.3d at 608. Thus, a court must determine whether the claim at issue in the current case is the same claim that was brought, or could have been brought, in the first proceeding. *Foster*, ¶ 29. The focus of the inquiry is

whether the "same claim or cause of action requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies." *Argus Real Est., Inc.,* 109 P.3d at 608-09 (quoting *Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 199 (Colo. 1999)).

¶ 23     Beginning with Eisele's affirmative defense of fraud, we are unpersuaded that an affirmative defense may be "repeatedly applied in different lawsuits if necessary" when it requires a court to reopen a previously decided issue. We cannot find, and Eisele did not provide, any authority supporting his contention that an affirmative defense is exempt from the doctrine of claim preclusion. Rather, claim preclusion bars not only claims that were decided, but also claims that could have been raised, but were not, in the prior proceeding. *See Foster,* ¶ 29. Eisele cannot, through an affirmative defense, relitigate the same ownership issues of the property and vehicle that were decided in the 2023 litigation. *See id.*

¶ 24     Additionally, we conclude that Eisele's claim for an equitable contribution determination was properly precluded. We are unpersuaded by Eisele's argument that the claims made in this case — a partition — are different from those in the 2023

litigation — a declaration of the parties' rights in the subject properties. Instead, we agree with the district court that the claims in the two cases are the same because "[t]he basic injury being alleged by Defendant Eisle is the perceived and argued loss of his unequal contribution to the two assets." Here, as in the 2023 litigation, Eisele argues that he should have a greater than 50% ownership of the property and vehicle because of his contributions to both. We conclude that his requests to adjust ownership interest percentages based on events arising before the prior declaration of equal ownership in the 2023 litigation are barred by principles of finality. Eisele provides no evidence acquired after the 2023 litigation to support his partition contentions in this case. Moreover, "[a] court's function when deciding a partition action is not to create new interests in property . . . , but is merely to sever the unity of possession owned by the tenants." *Martinez v. Martinez,* 638 P.2d 834, 836 (Colo. App. 1981). Accordingly, we conclude that the claims between the two cases are identical.

## 4. Identity of Parties

¶ 25 Finally, there must be identical parties to satisfy the final factor in a claim preclusion case. *Argus Real Est., Inc.*, 109 P.3d at 608. Because the parties are the same, this factor is satisfied.

¶ 26 Accordingly, we discern no error in the district court's ruling and affirm it.

## III. Ouster

¶ 27 Eisele next contends that the district court erred by not making ouster findings and by awarding Roley rental money for the time she owned, but did not live in, the property. We are not persuaded.

### A. Standard of Review and Applicable Law

¶ 28 "An ouster, in the law of tenancy in common, is the wrongful dispossession or exclusion by one tenant in common of his cotenant or cotenants from the common property of which they are entitled to possession." *Hed v. Pullara*, 261 P.2d 509, 511 (Colo. 1953) (citation omitted). An ouster only occurs if one co-owner wrongfully excludes another co-owner who has a right to possession of the property. *Id.* Under that scenario, the excluded co-owner has the

14

right to recover rent from the other co-owner for the period that he or she is wrongfully excluded from the property. *Id.*

¶ 29 As previously stated, "[a] court's function when deciding a partition action is not to create new interests in property held by tenants in common[] but is merely to sever the unity of possession owned by the tenants." *Martinez*, 638 P.2d at 836.

¶ 30 A partition suit is an equitable proceeding, and a court must make a "complete adjudication as to the rights of all persons to the property." *Id.* Under section 38-28-110, C.R.S. 2025, "[t]he court at any time may make such orders as it may deem necessary to promote the ends of justice to completely adjudicate every question and controversy concerning the title, rights, and interest of all persons." After the court has divided the property, the court may then, to reach an equitable result, "compute the contribution of each tenant and offset any amount owing against the one half share held by each tenant." *Martinez*, 638 P.2d at 836.

¶ 31 We review a district court's fashioning of an equitable remedy for an abuse of discretion. *See Young Props. v. Wolflick*, 87 P.3d 235, 237 (Colo. App. 2003). A court abuses its discretion only where it misapplies or misconstrues the law, or if its decision is

manifestly arbitrary, unreasonable, or unfair. *Gagne v. Gagne*, 2019 COA 42, ¶ 16.

## B. Analysis

¶ 32    While we acknowledge the discrepancy between the district court's finding in the 2023 litigation that the parties owned the property in joint tenancy and the district court's statement in this case that it had previously found the parties owned the property as tenants in common, this discrepancy is irrelevant to our analysis because the function of a partition action is to sever the unity of possession between joint owners. *See Martinez*, 638 P.2d at 836.

¶ 33    Despite the district court stating that it need not reach the question of whether an ouster occurred, we conclude any error is harmless because the record shows that an ouster occurred and supports the court's equitable partition of the property and vehicle. Indeed, on September 23, 2023, Eisele pleaded (in the previous action) that both possession and equitable title rested with him and that Roley was entitled to no monies, thereby establishing "the adverse character of possession" known by Roley. *Hed*, 261 P.2d at 511 (citation omitted). Thereafter, in November, Eisele filed a protection order against Roley and she left the house. Although the

order expired in December, Eisele testified that when the order ended, he "took most of her belongings up to her house" and claimed that he desired to keep the house for himself, thereby establishing that he claimed the entire property in his own right. *First Nat'l Bank of Denv. v. Groussman*, 483 P.2d 398, 402 (Colo. App.), *aff'd*, 491 P.2d 1382 (Colo. 1971). Roley presented her ouster argument in support of her request for an adjustment to account for the unequal distribution of the benefits of ownership since the 2023 litigation, which had established the parties as joint owners. The record supports the district court's finding that since the November 2023 protection order, Eisele resided at the property and Roley had not. Roley had not resided at the property despite her 50% ownership. Therefore, Eisele enjoyed a significant benefit of ownership since the decree of equal ownership that Roley had not. The district court was not required to make "ouster" findings after it had determined that equity would be served by awarding Roley an offset for Eisele having occupied the property to Roley's exclusion for the one-year period since the declaration of equal ownership. *See Martinez*, 638 P.2d at 836.

¶ 34 Accordingly, the district court's ruling that Eisele's sole possession of the property entitled Roley to an offset of one half of the rent from April 3, 2024, to the present was not an abuse of discretion. *See Young Props.*, 87 P.3d at 237.

## IV. Disposition

¶ 35 The judgment is affirmed.

JUDGE KUHN and JUDGE BERNARD concur.