**Donja VAUGHN, Plaintiff,**

v.

**Margaret KREHBIEL, Robert Krehbiel, Joel Stevenson, and Gary Shoun, Defendants.**

No. 04–MK–1358 (CBS).

United States District Court, D. Colorado.

April 11, 2005.

Donja Vaughn, Cortez, CO, Pro se.

## ORDER GRANTING, IN PART, MOTION TO DISMISS

KRIEGER, District Judge.

**THIS MATTER** comes before the Court pursuant to Defendants Margaret and Robert Krehbiel's Motion to Dismiss (# 14), the Plaintiff's response (# 21)[1], and

1. The Court granted (# 22) a request (# 20) by the Plaintiff to extend the deadline for responding the Motion to Dismiss to December 10, 2004, subject to the Plaintiff's counsel complying with D.C. Colo. L. Civ. R. 6.1(A) within 96 hours of the Court's Order. The Plaintiff filed her response on December 13, 2004. On December 20, 2004, the Plaintiff filed a motion to extend (# 23) the time to comply with that portion of the Court's Order relating to Local Rule 6.1, but did not otherwise request an extension of time *nunc pro tunc* to file her response to the Motion to Dismiss. Although the Plaintiff's response is

the Krehbiels' reply (# 24)[2]; and the Plaintiff's Motion for Discovery (# 47), and the Krehbiel's response (# 48).

### BACKGROUND

According to the Complaint (# 1), on March 4, 2002, the Plaintiff contracted with the Krehbiels to board three of the Plaintiff's horses. The parties modified that agreement on March 21, 2002, to provide for the boarding of more than 20 additional horses. On April 13, 2002, the Plaintiff and the Krehbiel's agreed that, as security for the Plaintiff's promise to pay for some hay, the Krehbiel's would hold the brand inspection card for one particular horse, and would take ownership of the horse if the Plaintiff did not pay for the hay by April 26, 2002. The Complaint alleges that the Plaintiff paid contractual boarding costs in full through April 26, 2002 by tendering two horses to the Krehbiels as payment.

On April 22, 2002, the Krehbiels filed an agister's lien[3] on more than 20 of the horses. The Complaint implies that, as a result of this filing, the Krehbiels refused to permit the Plaintiff to access the horses. On April 30, 2002, the Plaintiff commenced an action in Colorado County Court for the County of Montezuma, seeking an injunction permitting her to inspect her horses. The outcome of that proceeding is not described in the Complaint, but it appears that on May 2, 2002, the Plaintiff entered onto the Krehbiels' property to feed her horses and provide treatment to one of the horses that had become injured. The Krehbiels, allegedly disagreeing with the Plaintiff's feeding of the horses, contacted the Montezuma County District Attorney in an effort to restrain the Plaintiff from coming onto their property or accessing the horses.

The same day, Defendant Shoun, Brand Commissioner for the State of Colorado, wrote to the Plaintiff stating that title to

---

technically untimely, the Krehbiels have replied and thus, there is no prejudice to them in the Court's consideration of the Plaintiff's untimely response. However, the Court advises the Plaintiff's counsel that, in the future, it shall not consider any untimely submissions filed in this case.

2. Without seeking leave of Court to do so, the Plaintiff filed a sur-reply (# 27), and a supplement (# 28) to that sur-reply. The Krehbiel's moved to strike (# 29) the sur-reply and supplement and requested sanctions. Although the Plaintiff did not respond to the Motion to Strike, she thereafter filed a motion for leave to file the sur-reply (# 30) out of time. Two days later, again without leave of Court, the Plaintiff filed a second supplement (# 31) to the sur-reply. The Krehbiels again moved to strike (# 33) the Plaintiff's second supplemental filing and requested sanctions, and in response, the Plaintiff again sought leave (# 38) out of time to file the second supplement, and in response, the Krehbiels renewed their request for sanctions (# 45).

On February 3, 2005, the Court denied the Plaintiff's initial request for leave out-of-time

to file the sur-reply and supplement (# 46). As a result, the Court shall not consider the sur-reply and supplement, and thus, the Krehbiel's Motion to Strike the sur-reply and supplement is denied as moot. The Court also denies the Plaintiff's request for leave to file the second supplement out-of-time, as no good cause has been shown to justify additional briefing on the Motion to Dismiss. Having denied that request, the Court will not consider the second supplement, and denies the Krehbiel's Motion to Strike that second supplement as moot. The Court will also deny all requests for sanctions against the Plaintiff at this time, but advises the Plaintiff that any future filing of a sur-reply or supplemental brief without prior leave of the Court may be considered frivolous and vexatious conduct and may result in the imposition of sanctions, up to and including an award of attorney's fees to the Defendants, the striking of claims, or the dismissal of this action.

3. An agister's lien is a lien on animals left in the care of an bailee to secure payment of the bailee's fees for housing, feeding, and caring for the animals.

the liened horses was "on hold for questionable title." The Sheriff who delivered Shoun's letter to the Plaintiff interpreted the letter to bar the Plaintiff from accessing the horses. Although the Plaintiff, through her attorney, requested that the Sheriff permit the Plaintiff to inspect the horses on the Krehbiels' property, the Sheriff refused to do so. Although the Complaint is not clear as to the timeframe, the Plaintiff alleges that at some point, Defendant Robert Krehbiel failed to provide adequate food for the horses, causing them to suffer physical harm and ultimately causing the death of one of the horses on May 19, 2002.

On May 3, 2002, the Krehbiels commenced an action for emergency foreclosure of the agister's lien. On May 8, 2002, the Plaintiff was arrested and charged with false reporting, based on an incident on April 30, 2002 in which she reported to the Montezuma County Sheriff that the horses were being starved. However, the criminal charges against the Plaintiff were dismissed on July 26, 2002.

On June 4, 2002, the Krehbiels released a horse from the lien and delivered it to an individual named Nancy Funkhouser. According to the Complaint, the delivery of the horse violated a May 2, 2002 Order of the County Court requiring the horses to remain on the Krehbiels' property. Thereafter, on June 6, 2002, the Krehbiels released another two horses to an individual named Heidi Fruhling. On June 18, 2002, the Krehbiels released two additional horses to an individual named Simms Rhea. On July 8, 2002, the County Court entered an order deeming the Krehbiels' lien void.

The Plaintiff commenced this case *pro se* on July 1, 2004, alleging six causes of action: (i) breach of contract against the

Krehbiels, insofar as they failed to provide adequate food and care to the horses and barred the Plaintiff from tending to them; (ii) an unspecified claim, apparently pursuant to either 42 U.S.C. § 1983 or § 1985, in that the Defendants conspired together to deprive the Plaintiff of her property without due process; (iii) that the Defendants tortiously interfered with contracts between the Plaintiff and the Krehbiels and the Plaintiff and third parties; (iv) a common-law claim for malicious prosecution, apparently against all Defendants, although it refers to "civil proceedings" against the Plaintiff, suggesting that the claim relates to the Krehbiels' suit to foreclose the agister's lien, which is the only civil suit mentioned in the Complaint that was instituted against the Plaintiff, (v) a common-law conversion claim against all Defendants based on the Krehbiels' transfer of the horses to third parties without the Plaintiff's consent; and (vi) negligence against the Krehbiels, based on their failure to provide adequate care and water to the horses.

On November 18, 2004, the Krehbiels moved to dismiss the Complaint as against them, arguing: (i) all claims other than breach of contract are barred by the statute of limitations; (ii) the Plaintiff's claims are barred by *res judicata,* based on the Plaintiff's April 30, 2002 action against the Krehbiels; and (iii) the § 1983 claim fails because the Krehbiels are not state actors, and a § 1985 claim fails due to the lack of any specific allegations of conspiracy. Although the Plaintiff filed a substantive response to the Motion to Dismiss on December 13, 2004, on February 22, 2005, the Plaintiff filed a Motion to Permit Discovery in Aid of Response to Motion to Dismiss, arguing that she needed to conduct discovery on the nature of the Krehbiel's appeal of the County Court's order vacat-

ing the lien, insofar as the prosecution of a frivolous appeal could constitute an act of malicious prosecution.

## *JURISDICTION*

The Court has subject-jurisdiction over the Plaintiff's Due Process claim pursuant to 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction over the remaining common-law claims pursuant to 28 U.S.C § 1367.

## *ANALYSIS*

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir.2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir.2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir.2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v.*

*Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Although the Plaintiff commenced this action *pro se*, and thus would ordinarily be entitled to a liberal construction of her lay pleadings, *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991), the Court notes that counsel entered an appearance for the Plaintiff on October 19, 2004 (# 12), before the Motion to Dismiss was filed. The Court assumes that the Plaintiff's counsel has reviewed the Plaintiff's *pro se* Complaint and elected not to seek amendment to cure any potential defect or to clarify the nature of the claims. Thus, the Court will construe the Complaint as it would any other pleading filed by a litigant represented by counsel.

### B. Request for discovery

█ Before the Court can turn to the substance of the Motion to Dismiss, it must first determine whether the Plaintiff's motion seeking discovery is meritorious. The Court finds that it is not. First, the Plaintiff has already responded to the Motion to Dismiss, and in that response, never claimed a need for discovery. Indeed, the late filing of the Motion for Discovery suggests-as do the Plaintiff's filing of sur-replies and supplements that the Plaintiff's counsel is constantly seeking to refine theories or present new arguments. The Court will not brook arguments presented in an evolving or piecemeal fashion. Moreover, the notion of needing discovery to respond to a motion to dismiss is oxymoronic. As stated above, on a motion to dismiss, the Court considers only the allegations in the Complaint, exhibits attached

to the Complaint, and external documents necessarily referenced and relied upon by the Plaintiff in the Complaint. All three categories of information are, almost by definition, in the control of the Plaintiff, and thus, discovery will rarely be necessary to respond to a motion to dismiss.[4] In addition, the "discovery" sought by the Plaintiff is not discovery at all. To the extent the Plaintiff believes that the sincerity of the Krehbiels' appeal of the County Court decision might give rise to a claim of malicious prosecution, that determination can be made merely by consulting the issues presented in the Krehbiels' brief (or, for that matter, the opinion of the District Court hearing the appeal), of which the Plaintiff should already have a copy. Thus, the Motion for Discovery is denied.

### C. Statute of limitations

■ The Krehbiels seek dismissal of all claims except the breach of contract claim as untimely. The Plaintiff concedes that the operative statute of limitations on all of the common-law claims is two years. C.R.S. § 13–80–102(1)(a). It is also undisputed that claims under 42 U.S.C. § 1983 and § 1985 are governed by the most analogous state statute. *Wilson v. Garcia,* 471 U.S. 261, 275, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Colorado, the most applicable statute is the general two-year residual limitation found in C.R.S. § 13–80–102(1)(*i* ). *Riel v. Reed,* 760 F.Supp. 852, 854 (D.Colo.1991). Thus, all of the Plaintiff's non-contract claims are subject to a two-year statute of limitations, and

must have accrued no earlier than July 1, 2002, two years prior to the commencement of this action.

■ The first non-contractual claim in the Complaint is the Plaintiff's Due Process claim. It is not clear precisely what acts the Plaintiff contends amounts to such a deprivation. Construing the Complaint in the light most favorable to the Plaintiff, the Court can conceive of two possibly types of acts by the Krehbiels that could arguably deprived the Plaintiff of property: the refusal to allow her access to the horses and the transfer of the horses to third parties. It is clear from the Complaint that the transfer of the horses took place between June 6 and June 18, 2002, and thus, any claim with regard to those transfers is barred by the statute of limitations.

The issue of the Plaintiff's access to the horses presents a slightly more complex question. Read in the light most favorable to the Plaintiff, the Complaint alleges that the Krehbiels terminated her access to the horses as of May 3, 2002. Although the Complaint does not so state, the Court assumes that the Plaintiff's access to the horses was restored on July 8, 2002, when the County Court nullified the Krehbiels' lien. Thus, the question to be considered is when the Plaintiff's § 1983 or § 1985 claim accrued for limitations purposes. A civil rights claim accrues when the Plaintiff knows or has reason to know of the injury that is the basis of the action. *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1154 (10th Cir.1998). Here,

---

4. The fact that both parties have attached other matters to their briefing does not alter this conclusion. When faced with such extraneous material, the Court may elect to disregard it, or, upon notice, to convert the motion to one for summary judgment under Fed.

R.Civ.P. 56. Because the Krehbiels' arguments are primarily legal in nature, rather than factual, the Court will elect to disregard all inappropriate submissions rather than convert the motion.

the injury in question is the refusal to permit the Plaintiff to access the horses without an opportunity to be heard. It is clear from the Complaint that the Plaintiff was aware that she was being denied access as of May 2, 2002, when she was told that by the Montezuma County Sheriff that she could no longer go onto the Krehbiels' property. *Complaint,* ¶ 19. The Plaintiff knew or should have known that the denial of access occurred without her having an opportunity to be heard no later than May 3, 2002, when her attorney called the Montezuma County Sheriff to request access and was told that such access would not be permitted. *Complaint,* ¶ 20. Thus, the Plaintiff's § 1983 or § 1985 claim accrued no later than May 3, 2002, and is therefore barred by the statute of limitations.[5]

■ The Plaintiff does not directly address the timeliness of her civil rights claim in her response to the Motion to Dismiss, but argues generally that tortious acts are subject to a continuously-accruing statute of limitations so long as the tortious conduct is taking place. *Citing U.S. v. Hess,* 194 F.3d 1164, 1176–77 n. 12 (10th Cir.1999); *Hoery v. U.S.,* 324 F.3d 1220, 1222 (10th Cir.2003). In *Hoery,* the court drew a distinction between "permanent" torts and "continuing" torts, finding that the former accrue upon the plaintiff learning of both the injury and its cause, and the latter accruing as of the last date that the tortious conduct occurred. 324 F.3d at 1222. The Tenth Circuit elaborated on the "continuing wrong" doctrine in *Hess,* citing from a prior case in which it had held that "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury." 194 F.3d at 1176, *citing Tiberi v. Cigna Corp.,* 89 F.3d 1423, 1430 (10th Cir.1996). However, in *Hess,* the court noted that *Tiberi* was premised upon facts in which the defendant had fraudulently concealed information from the plaintiff until after the statute of limitations would otherwise have run. 194 F.3d at 1176. No such fraudulent concealment is alleged here; indeed, the Plaintiff clearly knew that she had been barred from entering the Krehbiels' land on May 2, 2002. It is clear from *Hess* and *Tiberi* that in these circumstances, the "continuing wrong" doctrine would not postpone accrual of the claim. *Hess,* 194 F.3d at 1176 n. 13 ("In *Tiberi,* we acknowledged that the "continuing wrong" doctrine cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress") (internal quotes omitted), *quoting Tiberi,* 89 F.3d at 1431.

Accordingly, because the Plaintiff's injury namely, her lack of access to the horses was definite and discoverable in May 2002, the mere fact that that lack of access continued does not warrant delaying accrual of the statute of limitations. The Plaintiff's civil rights claims against the Krehbiels are untimely and are thus dismissed.

■ Next, the Court turns to the Plaintiff's common-law claims. The third cause

---

5. Ordinarily, the dismissal of the sole federal claim would likely result in the Court declining to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(2). However, because there are other Defendants who have not moved against the federal claims, and because those Defendants are also named in the same common-law claims as the Krehbiels, the Court will not dismiss all claims the Krehbiels for lack of subject-matter jurisdiction at this time. However, should the Court subsequently dismiss the federal claims against the remaining Defendants, dismissal of any remaining common-law claims for lack of subject-matter jurisdiction is a likely result.

of action alleges that the Krehbiels tortiously interfered with contracts between the Plaintiff and third parties. Although the Complaint does not clearly identify what actions taken by the Krehbiels constitute such interference, the Court once again notes that the latest discrete act allegedly committed by the Krehbiels was the transfer of a horse on June 16, 2002. Because this act falls outside the two-year statute of limitations, the tortious interference claim is untimely and dismissed as against the Krehbiels.

The fourth cause of action alleges malicious prosecution. As best the Court can determine from the Complaint, this claim relates to the Krehbiels' suit to foreclose their lien against the Plaintiff. Under Colorado law, a claim for malicious prosecution does not accrue until the underlying proceeding is resolved in the plaintiff's favor. *Allen v. City of Aurora,* 892 P.2d 333, 335 (Colo.App.1994). The County Court ruled in the Plaintiff's favor on the Krehbiels' suit to foreclose the lien on July 8, 2002, within the two-year statute of limitations. Accordingly, this claim is timely.

■ The fifth claim sounds in conversion, based on the Krehbiels' transfer of horses to third parties. Because the last such transfer alleged in the Complaint occurred on June 16, 2002, more than two-years before the case was commenced, this claim is untimely.

■ Finally, the Plaintiff asserts a claim for negligence, based on the Krehbiels' alleged failure to care for the horses. Although the bulk of the time that the horses were under the Krehbiels' care occurred outside the limitations period, the Complaint, read in the light most favorable to the Plaintiff, suggests that the horses remained in the Krehbiels' care until July 8, 2002. It is conceivable that negligent care during the seven-day period that falls within the statute of limitations could cause injury to the Plaintiff, and thus, the negligence claim is, at least in part, timely.

For these reasons, only the Plaintiff's malicious prosecution and negligence claims against the Krehbiels survive dismissal on timeliness grounds.

## D. *Res judicata*

■ The remaining argument urged by the Krehbiels relating to these claims is *res judicata,* to which the Court now turns. Under Colorado law, the doctrine of *res judicata-* which the Court will hereafter refer to as "claim preclusion" operates "to preclude the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not." *Argus Real Estate, Inc. v. E-470 Public Highway Authority,* 109 P.3d 604 (2005). For the doctrine to apply, the party asserting it must show: (i) identity of subject matter, (ii) identity of claims for relief, (iii) identity or privity between parties to the actions; and (iv) finality of the judgment. *Id.*

The first and third elements are indisputably present here, as the prior litigation between these parties also concerned the Krehbiels' care of the Plaintiff's horses. The Complaint alleges that the Plaintiff commenced civil action no. 2–C–147 in County Court against the Krehbiels. Although the Plaintiff did not attach the complaint from that action to the Complaint here, the Krehbiels have provided a copy attached to their motion to dismiss. Because the underlying County Court complaint is expressly referenced in the Complaint and relied upon by the Plaintiff,

the Court considers it here. As relevant here, the complaint contains two causes of action: a claim for breach of contract, in that the Krehbiels allegedly failed to provide food for the horses; and a claim for negligence relating to the death of one horse.

■ The questions presented here are whether the claims asserted in both actions are similar, and whether the prior action was resolved by a final judgment. Turning to the latter question first, the Court notes that the County Court's ruling is not embodied in a document formally identified as a judgment. Rather, the County Court entered a written document that resembles a judgment in its content, but which is captioned as an "Order." [6] This document only vacates the lien, returns certain horses to the Plaintiff, enters title to another horse in favor of the Krehbiels, and awards the Krehbiels $350 for repairs they performed on a truck. The document does not address either the Plaintiff's breach of contract or negligence claim. However, the Court addressed the breach of contract claim in its oral findings of fact, stating "The Court doesn't find that the Krehbiels breached any contract." This Court finds that this oral ruling is the equivalent of a judgment in favor of the Krehbiels on the Plaintiff's breach of contract claim, notwithstanding the failure of the County Court to note it in its written Order. Notably, in the same ruling that

the County Court found no breach of contract, it went on to state "And so that would be the judgment of the Court." Thus, the Court finds that the prior action ended in a final [7] judgment against the Plaintiff on her claim that the Krehbiels breached the contract by failing to feed the horses.

■ Thus, the Court must determine whether the Plaintiff's breach of contract and negligence claims here are sufficiently related to the breach of contract claim adjudicated by the County Court. In making this assessment, the Court notes that the identity of claims element does not require that the same theory be asserted in both actions, but rather, turns on the injury for which relief is demanded in each action. *Argus* at 608–09. The judgment below operates to "extinguish[ ] ... all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* Here, the breach of contract claim below alleged that "the Defendants have failed to provide adequate feed to the horses," which has "negatively impaired the horses' health." The instant breach of contract claim alleges that the Krehbiels "fail[ed] to provide adequate food, water and care" to the horses, as well as pursued the agister's lien and transferred the horses without the Plaintiff's permission, all in breach of the contract.

---

**6.** The Court can consider this document because the Plaintiff's civil suit against the Krehbiels was consolidated with the Krehbiels' action to foreclose the lien, which resulted in a single ruling on both cases. That ruling is referenced in the Plaintiff's Complaint and relied upon in framing the Plaintiff's claims, and thus, is a proper subject for consideration on a Motion to Dismiss.

**7.** The Krehbiels appealed that portion of the County Court's decision that vacated the lien. The Plaintiff did not cross-appeal the County Court's denial of her breach of contract claim, and thus, that denial became final after the time to appeal expired. In any event, as stated in the Complaint, the District Court affirmed the County Court's ruling in September 2003, rendering that ruling final for purposes here.

The instant negligence claim alleges that the Krehbiels breached an unspecified duty of care, and that as a result, "[one horse] died, [another] was made lame, and other horses suffered malnutrition and were unable to produce foals during a recovery period, as they were s[k]eletal and emaciated when Plaintiff received them."

 It is clear to the Court that the ruling by the County Court disposes of any claim that the Krehbiels failed to provide the horses with adequate food, and bars any subsequent claim that involves an assertion that the horses were malnourished. The adequacy of the food was the central issue of the Plaintiff's claim below, and thus, the County Court's denial of the Plaintiff's claim in that regard forecloses litigation in this Court as to that issue, as well as to any issue connected to the injury claimed by the Plaintiff relating to inadequate feeding of the horses. Once that issue is stripped out from the instant breach of contract claim, it is clear that no viable claim remains. Nothing in the Complaint indicates that the contract between the Plaintiff and the Krehbiels for the boarding of the horses contained language preventing the Krehbiels from filing an agister's lien, or contained a promise by the Krehbiels not to transfer the horses to third parties. Thus, absent the allegation of inadequate feeding, the Complaint fails to state a claim for breach of contract. With regard to the negligence claim, it is clear from the Complaint that the death of the horse and the malnutrition claims are also related to allegedly inadequate feeding. The only portion of the negligence claim not effectively adjudicated below is the claim that, as a result of the Krehbiels' negligence, an injury to one horse was improperly treated, eventually rendering the horse lame. Going forward, the Plaintiff's negligence claim will be limited to this sole issue.

For obvious reasons, the Plaintiff's malicious prosecution claim cannot be barred by the doctrine of claim preclusion, as it is the prosecution of the underlying County Court action that gives rise to the claim in the first place.

Thus, the doctrine of claim preclusion warrants the dismissal of the Plaintiff's breach of contract claim, and all portions of the Plaintiff's negligence claim except that relating to an alleged breach of care resulting in an improperly treated injury to one horse, resulting in that horse becoming lame.

## CONCLUSION

For the foregoing reasons, the Krehbiels' Motion to Dismiss (# 14) is **GRANTED IN PART,** insofar as the Plaintiff's first claim for relief (breach of contract); second claim for relief (deprivation of Due Process); third claim for relief (tortious interference with contract); fifth claim for relief (conversion); and sixth claim for relief (negligence), to the extent it claims anything other than a breach of care in failing to provide proper treatment for an injury to the horse Nadine West, are **DISMISSED** as against Defendants Margaret Krehbiel and Robert Krehbiel; and **DENIED IN PART,** insofar as the Plaintiff has stated valid claims for malicious prosecution and negligence as it relates to the failure to provide care for the injury to the horse Nadine West. The Plaintiff's Motion for Extension of Time (# 23) to comply with Local Rule 6.1(A) is **DENIED AS MOOT,** as the Plaintiff's counsel has certified his compliance with that rule as directed by the Court. The Plaintiffs' Mo-

tion to Supplement (# 38) is **DENIED,** and the Krehbiels' Motions to Strike (# 29, 33) are **DENIED AS MOOT,** insofar as the Court has not considered the Plaintiff's sur-reply or supplemental submissions. The Krehbiels' Motion for Sanctions (# 45) is **DENIED.** The Plaintiff's Motion for Discovery (# 47) is **DENIED.**