**E-FILED**
**CNMI SUPREME COURT**
E-filed: Dec 16 2023 12:26PM
Clerk Review: Dec 16 2023 12:27PM
Filing ID: 71640409
Case No.: 2023-SCC-0003-CIV
NoraV  Borja



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

IN RE THE ESTATE OF BERNADITA A. MANGLONA,

*Deceased.*

**Supreme Court No. 2023-SCC-0003-CIV**

---

**SLIP OPINION**

**Cite as: 2023 MP 13**

Decided December 16, 2023

———————

JUSTICE PRO TEMPORE MARIA TERESA B. CENZON
JUSTICE PRO TEMPORE ELYZE M. IRIARTE
JUSTICE PRO TEMPORE BENJAMIN C. SISON, JR.

———————

Superior Court Civil Action No. 13-0195-CV
Judge Pro Tempore David A. Wiseman

———————

PER CURIAM:

¶ 1     Appellants, the Co-Trustees for the PB Manglona Family Trust ("Appellants"), appeal the order of the underlying Probate Court finding that the doctrine of res judicata precluded Appellants from raising a survivorship claim over three parcels of real property located in Rota. Appellees, the Co-Administrators of the Estate of Bernadita A. Manglona ("Appellees"), contend that because the survivorship claim was not raised in a quiet title action between these same parties, and which was reduced to a final judgment, the subsequent assertion of the claim in Probate Court should be barred.

¶ 2     For the reasons set forth herein, we AFFIRM the Probate Court's Order Granting Co-Administrators' Motion for Reconsideration. Further, we GRANT Appellees' Request for Judicial Notice.

## I. FACTS AND PROCEDURAL HISTORY
### A.   General Background.

¶ 3     This appeal is the latest in the extensive and contentious litigation surrounding the estate of Bernadita A. Manglona ("Bernadita") who died intestate on May 30, 2009. Probate of Bernadita's estate did not commence until approximately four years later in 2013, when Thomas A. Manglona and Priscilla M. Torres were appointed co-administrators of Bernadita's estate.

¶ 4     Bernadita was married to Prudencio T. Manglona ("PTM"), who passed away on or about June 3, 2014.

¶ 5     The present dispute involves three pieces of real property located in Rota: (1) Lot No. 3496; (2) Lot No. 551 R01; and (3) Lot No. 3144 (TD 397) (collectively the "Rota Properties"), that have yet to be distributed.

¶ 6     The Rota Properties initially passed to PTM after Bernadita died. Prior to PTM's passing, he conveyed the Rota Properties, among other assets, into his trust, the PB Manglona Family Trust (hereinafter the "PTM Trust").

### B.     Probate of the Estate of Bernadita A. Manglona (Case No. 13-0195).

¶ 7     Most of the assets in Bernadita's Estate were distributed via the probate proceedings that commenced in 2013 (the "Probate Case"). These other assets are irrelevant to the present issue before this Court.

¶ 8     As to the Rota Properties, the underlying Probate Court determined on March 3, 2015, that, as to ownership, Bernadita's Estate retained a 50% interest in the Rota Properties, with the other 50% retained by the PTM Trust. Appellee's Appx. 058-059.

¶ 9     However, in the same order, the Court suggested that the Appellants file a quiet title action to "further resolve" the dispute as to whether the Rota Properties constituted ancestral or marital property, and "to determine this issue or to settle the dispute amongst the heirs." *Id.* at 059.

### C. *The 2015 Quiet Title Case (Case No. 15-0082).*

¶ 10    On March 9, 2015, Appellants initiated a quiet title action relative to the Rota Properties in the case of *Co-trustees for PB Manglona Family Trust v. Co-administrators of the Estate of Bernadita A. Manglona*, Civ. No. 15-0082 (NMI Super. Ct.) (hereinafter the "Quiet Title Case"). Appellants contend that they were directed to file the quiet title action by the Probate Court.

¶ 11    In the initial nine-paragraph Complaint,[1] Appellants sought to have the Rota Properties declared to be ancestral properties, thus giving the PTM Trust full ownership over the Rota Properties. Appellants sought no other relief.

¶ 12    Appellees then filed a motion for summary judgment which was granted in part on a technical issue. As a result, Appellants filed an Amended Verified Complaint to Quiet Title in which one (1) count was set forth, seeking, again, to quiet title to the Rota Properties on the grounds that they constituted ancestral property.

¶ 13    Appellants then filed a motion for summary judgment which was denied by the Superior Court. A second motion for summary judgment was then filed by Appellants, which was also denied. No arguments relative to a survivorship interest were raised in these motions.

¶ 14    The matter proceeded to a bench trial on March 2, 2017, wherein the Court determined that the Rota Properties were marital property and not ancestral lands pursuant to 8 CMC § 2902.

¶ 15    Appellants appealed the decision, but the appeal was dismissed by the NMI Supreme Court in *Co-Trustees For PB Manglona Family Trust v. Co-Administrators of Estate of Bernadita A. Manglona,* 2018 MP 3.

¶ 16    In the record before this Court, there is no indication that Appellants ever raised the issue, or presented an argument, that the Rota Properties should pass through a survivorship interest in the Quiet Title Case.

### D. *Post-Quiet Title Case Probate of the Estate of Bernadita.*

¶ 17    With the issue of the characterization of the Rota Properties now resolved in the Quiet Title Case, the theater of the dispute returned to the probate of Bernadita's estate in probate court. By December 2017, the Rota Properties were ready for distribution.

¶ 18    Appellants objected to the distribution of 50% of the Rota Properties, arguing, for the first time, that by virtue of being the surviving spouse of Bernadita, PTM inherited a one-half interest in all of her properties. As a result, they argued, the PTM Trust itself, standing in PTM's shoes, owned 75% of the Rota Properties with Bernadita's Estate owning the remaining 25%.

---

[1]    The initial Complaint filed on March 9, 2015 was *PB Manglona Family Trust v. In re the Estate of Bernadita A. Manglona, et al.,* Case No. 15-0043-CV.

¶ 19　　Appellants calculate the 75% interest by adding the 50% interest of PTM to the 50% survivorship interest they claim of the 50% owned by Bernadita's Estate.

¶ 20　　On December 14, 2018, Appellants again objected to the distribution of one-half of the Rota Properties, reiterating their claim to a 75% interest in the Rota Properties based on PTM's survivorship interest. Appellants contended that neither the passage of time nor waiver could bar their request for a survivorship interest. This argument was raised again in Appellants' December 27, 2018, objections. In response, Appellees argued that the doctrine of res judicata barred the survivorship claim because it was never raised in the Quiet Title Case.

¶ 21　　In its August 1, 2022 Opinion, the Probate Court initially determined that res judicata did not preclude Appellants from raising their survivorship claim.[2] The Court reasoned that this was because the survivorship claim was "in essence a probate issue" that would "not neatly fit into the adversarial quiet title action." Further, the Court reasoned that the survivorship issue "did not form a singular transaction," such that Appellants were not re-litigating the same claim.

¶ 22　　Appellees filed a Motion for Reconsideration, arguing that the Probate Court erred in determining that res judicata did not preclude Appellants' survivorship claims. Appellee's Appx. At 086. Upon further consideration, the Probate Court reversed its decision and found that the doctrine of res judicata did in fact preclude Appellants' claims of a survivorship interest. It concluded that in initially finding that the issue of survivorship was not relevant in the Quiet Title Case, the Court erred, and that the issue should have been raised. Appellee's Appx. at 096.

¶ 23　　Appellants then filed the instant appeal.

## II. JURISDICTION

¶ 24　　This Court has jurisdiction over final judgments and orders of the Commonwealth Superior Court. NMI Const. art IV § 3. This Court's jurisdiction is undisputed.

---

[2]　Appellant and Appellee failed to include a copy of the Opinion in any of their submissions. Appellant failed to file an Appendix to the briefs as mandated under Rule 30 of the Supreme Court Rules. As a result, portions of the record to which the Appellant referred were not included for the Court's review. Consequently, pursuant to Rule 30(f), the Court has proceeded with the appendix filed by Appellee and takes judicial notice of other portions of the record not submitted by Appellant. See, Judicial Notice, *supra.*

### III. STANDARD OF REVIEW

¶ 25    Res judicata is an issue of law and is reviewed *de novo. Piteg v. Piteg,* 2000 MP 3 ¶ I (internal citations omitted).[3]

### IV. DISCUSSION
*A.    The Purposes of Quiet Title Actions and Probate.*

¶ 26    At the heart of this case is the issue of whether Appellants should have raised arguments regarding their claim of a survivorship interest in the Quite Title Case. Therefore, to begin, it is important to differentiate between quiet title actions and probate, and to examine the purposes, functions, and limitations of each.

¶ 27    CNMI courts have recognized a quiet title action as:

> [A] proceeding to establish the plaintiff's title to land by bringing into court an adverse claimant and there compelling [the adverse claimant] either to establish his [or her] claim or be forever after estopped from asserting it.
> *Songao v. Commonwealth of the Northern Mariana Islands*, 4 NMI 186, 4 n. 15 (1994).[4]

¶ 28    Further, an action to quiet title "lies against those who, at the time it is instituted, are the present claimants to the land under the instrument which creates the cloud." *Fusco v. Matsumoto,* 2011 MP 17 ¶ 21. Its purpose is to determine "the rights and interest in land as between plaintiffs and defendants." *Holcomb v. Morris*, 457 So. 2d. 973, 976 (1984); *see also Sommer v. Misty Valley, LLC*, 511 P.3d 833, 840 (Id. 2021) ("The cause of action for quiet title accrues where another person claims an interest in property 'adverse to' another.").

¶ 29    By contrast, probate "identifies heirs and distributes what interest the decedent had in the property but does not determine ownership in cases where title is contested." *Del Rosario v. Camacho,* 2001 MP 3 ¶ 51. Additionally, while a decree of distribution is "conclusive as to the rights of heirs, legatees, or devisees insofar as they claim in such capacities, the decree does not determine the validity of the deceased's interest in the property; it merely determines the succession or testamentary disposition of such title as the decedent may have had." *Id.*

¶ 30    Issues of survivorship are appropriately raised in quiet title actions. Quiet title actions routinely resolve matters involving rights of survivorship and

---

[3]  This case has no page numbers or paragraph numbers from which to cite. "¶ I" therefore references the first paragraph raised in the issue section of the opinion.

[4]  This case does not have page or paragraph numbers. The page citation therefore refers to the page of the PDF on cnmilaw.org.

disputes as to ownership of real property. For example, *In re Estate of Rios*, 2008 MP 5 ¶ 5, was a case in which a probate matter was reopened and proceeded concurrently with a quiet title action over ownership interests in certain real property belonging to the estate. Other jurisdictions follow a similar practice. *See Cahill v. United States*, 810 S.E.2d 480 (Ga. 2018); *Isom v. Bledsoe*, 488 So. 2d. 1356 (1986) (rev'd on other grounds); *Hruby v. Wayman*, 298 N.W. 639 (Iowa 1941); *Lynch v. Frost*, 727 P.2d 698 (Wash. Ct. App. 1986).

### B.    Res Judicata.

¶ 31    Res judicata refers to two concepts related to preclusion. Issue preclusion, also referred to as collateral estoppel, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been already litigated and decided." *Del Rosario*, 2001 MP 3 ¶ 62. Claim preclusion "refers to the effect of a judgment in foreclosing litigation of a matter that has not been litigated, because it should have been raised in an earlier suit." *Id.* (citing *Simmons-Harris v. Zelman*, 54 F. Supp. 2d 725, 730 (N.D. Ohio 1999)). The present case involves the latter concept.

¶ 32    Where a "valid and final judgment is rendered on a claim, res judicata will bar subsequent litigation on the original claim." *In re Estate of Camacho*, 4 NMI 22, 4 (1993).[5] The res judicata effect of a prior judgment depends on the scope of the prior cause of action or claim. *Id.* Res judicata will not only bar matters which were previously litigated, but also those matters which should have been litigated. *Id.*; *see also Piteg*, 2000 MP 3 ¶ 10.

¶ 33    The process of determining the claim or cause of action that may be subject to preclusion is "thus aimed at defining the matters that both might and should have been advanced in the first litigation." *Santos v. Santos*, 3 NMI 39, 49 (1992). Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 101 (1980)).

¶ 34    The *Santos* Court summarized the doctrine of res judicata as the following:

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876). The judgment puts an end to the cause of action, which cannot again be brought into

---

[5]    This case does not have page or paragraph numbers. The page citation therefore refers to the page of the PDF on cnmilaw.org.

litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.
*Santos,* 3 NMI at 48-49 (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948)).

¶ 35    Our Courts have adopted the "transactional analysis" approach in determining how a "claim" is defined in the context of res judicata. *Taman v. Marianas Public Land Corp.*, 4 NMI 287, 4 (1995).[6] Under this framework, "a plaintiff's claim will be barred where it is included in 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Id.* (quoting Restatement (Second) of Judgments § 4). A "transaction" connotes a "natural grouping or common nucleus of operative facts." *Id.*

¶ 36    Thus, "'[a]ll claims arising out of one transaction or factual situation are treated as being part of a single cause of action, and they are required to be litigated together.'" *Id.* (quoting *Brye v. Brakebush*, 32 F.3d 1179, 1183 (7th Cir. 1994)). Claims arising out of the same factual situation or transaction are considered the same. *Id.* at 4.

¶ 37    When determining whether issues in two cases constitute the same "transaction," we adopt a "pragmatic approach" by considering "whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit." *Etherton v. Serv. First Logistics, Inc.,* 807 Fed. Appx. 469, 471 (6th Cir. 2020).

¶ 38    Res judicata "'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Commonwealth of the Northern Mariana Islands v. Cabrera,* 1999 MP 2 ¶15 (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "Individuals are entitled to their day in court, but they are not entitled to have several tries in court on their claim." *Id.* (citing *Sablan v. Iginoef*, 1 NMI 190 (1990)).

¶ 39    Res judicata "applies with special force to quiet title actions." *Roselle v. Heirs & Devisees of Grover*, 789 P.2d 526, 529 (Id. Ct. App. 1990). Further:

> The parties in a quiet title action rightfully expect conflicting claims of ownership to be resolved. The very purpose of a quiet title action is to establish the security of title. Nothing could more profoundly disturb the security of title than for two judges, in separate actions involving the same parties, to enter contradictory decrees purporting to "quiet" title in the same property.
> *Id.*

---

[6]    This case does not have page or paragraph numbers. The page citation therefore refers to the page of the PDF on cnmilaw.org.

¶ 40     Here, the Parties' dispute is over their respective ownership interests in the Rota Properties. Because this is a dispute over ownership interests, the Quiet Title Case was the appropriate forum for the Parties to bring forth their claims to the Rota Properties and to resolve the issues surrounding their "rights and interests" fully and finally. Indeed, the very purpose of a quiet title action is to determine a party's "rights and interests" in real property over those of an adverse party. *Holcomb,* 457 So. 2d. at 976. Probate, by contrast, does not determine ownership and is limited to identifying heirs and distributing property. *Del Rosario,* 2001 MP 3 ¶ 51.

¶ 41     Appellants, who were the plaintiffs in the Quiet Title Case, chose to focus the issue in that case narrowly on whether the Rota Properties constituted ancestral or marital land in both their initial and amended complaints. As the plaintiffs, Appellants had every opportunity to raise any and all arguments, claims, or causes of action relative to the Rota Properties, but did not to do so. Appellants also filed two motions for summary judgment which similarly limited the issues to those raised in the complaint and did not address any purported survivorship interest.

¶ 42     Our jurisprudence has explicitly recognized the importance of finality in actions to quiet title. As the *Songao* Court noted, the failure by an adverse party to assert a claim in a quiet title action would "forever" estop the party from later asserting it. *Songao,* 4 NMI at 4 n. 15. Inherent in this notion is the requirement that any and all claims relative to a property be raised in a quiet title action so that a final and binding decision can be made.

¶ 43     The issue of the survivorship interest arose from the same common nucleus of operative facts as those alleged in the Quiet Title Case, namely the death of Bernadita and the distribution of, and interests in, the Rota Properties. The same material facts apply in the determination of whether the Rota Properties constituted marital or ancestral land, as they do to the issue of the survivorship interest. The issue of the survivorship interest was also part of the series of transactions from which the cause of action arose. This is because the survivorship interest was directly related to the characterization of the Rota Properties as marital land. It necessarily follows that if the Rota Properties were not ancestral land, a claim for a survivorship interest could apply. This possibility was known, or should have been known, to the parties at the outset of the Quiet Title Case.

¶ 44     The parties in the Quiet Title Case were the same as the disputing parties in the Probate Case. The Quiet Title Case was fully litigated with opportunities to raise multiple claims and theories, discovery was completed, and extensive motions were filed. The matter was also litigated to a full and final judgment in which it was found that the Rota Properties constituted marital land. The preclusive effect of res judicata would therefore apply to all matters that were, and should have, been brought in the Quiet Title Case.

¶ 45     Additionally, the transactional approach encompasses not just a "transaction," but also "all or any part" of the transaction or "series of connected transactions." *Taman,* 4. NMI at 4. The survivorship claim is directly connected to the issue of ownership, as well as to the characterization of the Rota Properties as marital. The facts underlying both the marital or ancestral property issue, as well as that of the survivorship claim were the same, involved the same properties, the same parties, the same interests, and can and should have been addressed together. They overall created a "convenient trial unit" in which all issues surrounding the Rota Properties could, and should, have been addressed at once to achieve a final resolution to all ownership issues.

¶ 46     *Estate of Hanson* involved facts similar to the present case.  126 Cal. App. 2d 71 (1954). In *Hanson,* a surviving spouse originally brought his claim against his late wife's estate in a quiet title action to determine whether an ownership interest in certain real property vested in him. After the surviving spouse's death, a probate matter was commenced to determine how his estate should be distributed. Among the heirs bringing a claim were heirs of the late wife, claiming that by virtue of certain portions of the estate constituting community property, they were entitled to a distribution under California's probate code. *Id.* at 72.

¶ 47     The California Court of Appeals found that res judicata applied to bar the claim of the wife's heirs. Because the heirs of the late wife were represented in the original quiet title action by virtue of the estate's administratrix's participation in the quiet title action, the Court concluded that the quiet title decree "is res judicata against those were heirs of the wife…that that decree is binding against [the wife's] estate and heirs and constitutes as against such heirs a conclusive determination that the two pieces of property were the separate property of [the husband]." *Id.* at 76.

¶ 48     The *Argus* case cited by the underlying Court is also persuasive and illustrative of how res judicata applies in a context similar to the present case. *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.,* 109 P.3d 604 (Colo. 2005). *Argus* involved two separate suits relating to claimed ownership interests in certain real property in Colorado. Among the issues in the first suit was whether a particular provision of a contract between the parties was enforceable regarding the land in dispute. The first *Argus* court found that the provision was void as violating the rule against perpetuities and was therefore unenforceable. *Id.* at 606-07. As a result, a second suit was filed in which new claims were raised seeking, among other relief, reformation of the contract, pursuant to statute, because the rule against perpetuities rendered its provisions void. *Id.*

¶ 49     The Colorado Supreme Court held that res judicata barred the petitioner's claim. *Id.* at 606-07. The Court reasoned that res judicata applied because the issue in the second case involved the same parcel of land, with the same agreement at issue, the same parties (through a successor-in-interest), and that the prior quiet title action resolved the matter with a final judgment. *Id.* at 608.

The very nature of a quiet title action made it "incumbent upon all parties to raise any claims, issues or defenses that may affect the court's adjudication of rights in the subject property as all rights are to be determined in a single action." *Id.* The theory of reformation of the contract was also an "alternative theory" that should have been asserted in the first action. *Id.* at 609. The Court summarized its holding as follows:

> Because [the parties] sought quiet title in *Argus I*, it was incumbent upon each party to raise any claims, issues and defenses it may have had that would affect the adjudication of rights in the parcel. As such, not only *could* Britton have raised its statutory reformation claim as affecting its rights in the parcel, but Britton *should* have raised the claim because the claim directly involved the adjudication of its rights in the parcel as part of the quiet title claim.
> *Id.*

¶ 50    The same reasoning in both *Hanson* and *Argus* applies to the present action. Where Appellants, as plaintiffs, filed a quiet title action, it was incumbent upon them to raise any and all claims, even as alternative theories, that would have affected the adjudication of rights in the Rota Properties. The survivorship claim, as a claim of ownership over the Rota Properties, was a claim that should have been raised in the Quiet Title Case because it directly affected the ownership rights of the parties to that action.

¶ 51    Other jurisdictions have ruled similarly on the preclusive effect a final judgment in a quiet title action has over subsequent actions involving claims that were, or should have been, raised in the quiet title action. *See Harrison v. Loyd*, 87 Ark. App. 356, 367-68 (2004) (The Arkansas Appellate Court determined res judicata barred the appellant's quiet title claim because he was a statutory heir to his father who had previously litigated the case decades earlier.); *Bissell v. College Dev. Co.*, 87 Ark. App. 356, 367-68 (2004) (Res judicata barred the appellant's quiet title claim because he was a statutory heir to his father who had previously litigated the case decades earlier.); *Remilliard v. Authier*, 20 S.D. 290 (1905) ("Whenever, in an action for possession of realty, the question of title is put in issue by the pleadings, the judgment prima facie constitutes an estoppel to the assertion of any title which exists in the losing party at the time of the former suit.").

¶ 52    The fact that the Probate Court directed the parties to litigate the dispute over their rights and interests in the Rota Properties in a separate quiet title action is also indicative that the Quiet Title Case was intended to be a full and final resolution to all issues surrounding ownership of the Rota Properties.

¶ 53    Finally, raising the issue of ownership of the Rota Properties in the Probate Case was inappropriate because probate courts "[do] not determine ownership in cases where title is contested." *Del Rosario,* 2001 MP 3 ¶ 51. Appellants concede

in their briefs that their survivorship claim is a claim of ownership in the Rota Properties. *See* Appellants' Reply Br. at 5 ("Trust, which is privy to PTM in this matter is not barred from asserting its *survivorship ownership of an additional 25% interest* in the disputed properties.") (Emphasis added).

¶ 54    Thus, by virtue of the issue of a survivorship interest being fundamentally a question of ownership, a quiet title action was the appropriate forum to raise such a claim so that any and all issues surrounding the ownership of the Rota Properties could be addressed at once.

### i. Ripeness of the Survivorship Claim.

¶ 55    Appellants contend that the issue of survivorship was not, and could not have been, raised in the Quiet Title Case because it was not ripe. They argue that the ownership issue of the Rota Properties had to be resolved first before the survivorship claim could be raised.

¶ 56    A claim is not ripe for adjudication "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Marine Revitalization Corp. v. Dep't of Land & Natural Res.,* 2011 MP 2 ¶ 8. The doctrine of res judicata applies to claims that were "ripe at the time of the prior judgment." *Feminist Women's Health Ctr. v. Codispoti,* 63 F.3d 863, 866 (9th Cir. 1995).

¶ 57    It is undisputed that the survivorship claim vested immediately upon Bernadita's death. Appellants' Br. at 6-7; Appellants' Reply Br. at 3-4 ("PTM's survivorship rights…were perfected on the date of [Bernadita's] death in May of 2009").

¶ 58    Appellants filed the Quiet Title Case to resolve the dispute over ownership of the Rota Properties, and, specifically, whether they constituted ancestral or marital properties. Because the survivorship interest, which is a type of ownership interest, vested immediately upon the death of Bernadita, the issue of the applicability of a survivorship interest was ripe for adjudication at the time of the Quiet Title Case's filing. The issue had been ripe, and the purported survivorship interest vested, from the time of Bernadita's death. As a result, when the Quiet Title Case was filed to resolve the question of ownership of the Rota Properties, it was an appropriate issue that could have, and should have, been raised.

¶ 59    Nothing prevented Appellants from, at minimum, raising the survivorship interest as an alternative theory of relief. Rule 8(a)(3) of the CNMI Rules of Civil Procedure explicitly allows for alternative types of relief to be included in the demand for relief sought. Because the survivorship interested vested immediately upon death, an alternative theory involving Appellants' survivorship interest was ripe at the time the Quiet Title Case was filed but was not raised.

¶ 60    Nor was the bringing of a survivorship claim contingent upon the finding that the Rota Properties were marital property. Such a piecemeal approach to

litigation is disfavored and goes against the very purposes of the res judicata doctrine, which are to promote judicial efficiency and prevent the filing of multiple lawsuits. *See Dodd v. Hood River County,* 136 F.3d 1219, 1225 (1998).

¶ 61     The doctrine of res judicata encompasses not just claims that were brought, but also those that "could have been raised in that action." *Santos*, 3 NMI at 48-49. Parties and their privies are bound not just as to every matter which was "offered and received," but also to "any other admissible matter which might have been offered for that purpose." *Id.* Evidence that the survivorship interest applied and had vested was readily available to Appellants and ripe at the time of filing of the Quiet Title Case, but was never brought forth. The finality of the judgment of the Quiet Title Case therefore should not be upset as a result.

### ii.   The Onus to Raise Legal Claims.

¶ 62     Appellants further argue that the survivorship interest cannot be extinguished by court order or otherwise. They allege that the "plain meaning" of 8 CMC § 2913 evidences the Legislature's intent that as long as a surviving spouse outlives the decedent by 120 hours, the mere failure to recognize the survivorship interest does not somehow waive or negate this right.

¶ 63     In applying res judicata to bar the survivorship interest claim, a court would not be "extinguishing" any right to which a party is entitled. Rather, the doctrine of res judicata mandates that a party raise arguments that would affect the adjudication of its rights or be forever barred from raising them again. *Songao,* 4 NMI at 4 n. 15. It is therefore incumbent upon the respective parties to raise appropriate theories or claims at the appropriate time and venue, or risk being precluded from raising them in the future.

¶ 64     *Argus* again is illustrative on this point. In *Argus,* the petitioner argued that in light of the first court's finding that the petitioner's interest in certain real property was void as violative of the rule against perpetuities, § 15-11-1106(2) of the Colorado Probate Code mandated a reformation of a contract pertaining to real property. *Argus,* 109 P.3d at 609. However, the Colorado Supreme Court held that this issue could not be raised as it was barred by res judicata since it was an alternative theory that could have, and should have, been raised in the previous action. *Id.*

¶ 65     The Colorado Supreme Court's holding applied despite the existence of statutory authority that would have led to a different result had it been raised at the appropriate time and forum. This is no different than the present case. Though Appellants correctly cite to authority that would likely establish a survivorship interest that vested immediately upon Bernadita's death, it was never raised until after the Quiet Title Case had already reached a final judgment. As in *Argus*, the fact that statutory authority exists conferring a right to a party does not absolve that party of the responsibility to appropriately raise their claim or be barred from doing so by the res judicata doctrine.

¶ 66    To find otherwise would undercut the very purpose of the res judicata doctrine and open the door to unnecessary and excessive litigation as parties raise new issues and arguments subsequent to the finality of previous judgments.

¶ 67    Further, the notion that a right applies automatically without a party having to even raise it undermines the very purpose of a quiet title action, especially when, as admitted by Appellant's counsel during oral argument, that parties "knew" of the survivorship issue when the Quiet Title Case was first filed. The purpose of a quiet title action is to determine "the rights and interest in land as between plaintiffs and defendants." *Holcomb v. Morris*, 457 So. 2d. 973, 976 (1984); *see also Sommer v. Misty Valley, LLC*, 511 P.3d 833, 840 (Id. 2021) ("The cause of action for quiet title accrues where another person claims an interest in property 'adverse to' another.").

¶ 68    If a party was not required to claim an interest in property due to it simply being automatic by virtue of a statute or some other law, the rights and interests in that land could not be fully and finally resolved.  As the *Songao* court noted, in a quiet title action, the adverse claimant must establish their claim or be "forever estopped from asserting it." *Songao v. Commonwealth of the Northern Mariana Islands*, 4 NMI 186, 4 n. 15 (1994).

¶ 69    As the US Supreme Court has noted in *Henderson v. United States*, a party must still assert a right in a timely manner, or face forfeiture of that right:

> [N]o procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.
> 568 U.S. 266, 271 (2013) (internal citations omitted).

¶ 70    The law:

> casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.
> *City of Glendale v. Marcus Cable Associates, LLC*, 180 Cal. Rptr. 3d 726, 744 (Cal. Ct. App. 2014).

¶ 71    A party therefore cannot remain silent on a claim only to later assert that the claim was valid by operation of law automatically. The full claim must be made or that party will be "forever estopped" from asserting it.

¶ 72    This interpretation also serves a practical purpose. Allowing a party to bring claims that they believe, correctly or incorrectly, to have applied to real

estate automatically on a later date, after the complete and final adjudication of the matter in a prior venue, would allow for the very type of piecemeal and fragmented litigation that the res judicata doctrine seeks to avoid. Further, it could also potentially open the door for claim after claim to be raised if all a party must do is to allege that their claim applies automatically by operation of law.

### C. Judicial Notice.

¶ 73    Appellees filed a Request for Judicial Notice (hereinafter "RJN") pursuant to Rule 27(a) of the NMI Supreme Court rules and Rule 201 of the NMI Rules of Evidence.

¶ 74    The RJN consisted of ten exhibits relating to the underlying action, the Quiet Title Case, and other separate actions involving the same parties. All ten (10) exhibits are pleadings or court orders.

¶ 75    Appellants did not file a response to the RJN, thus do not seem to oppose it.  Still, a court is not required to grant every unopposed motion and may deny an unopposed motion if the relief requested has no basis in law. *In re Kingman,* 2023 MP 6 ¶ 10 (internal citations omitted).

¶ 76    Rule 201(b) of the NMI Rules of Evidence provides that a court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the Commonwealth or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

¶ 77    For the Court to take judicial notice, the fact must be free of "reasonable dispute" because it is either "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *In re Disciplinary Proceedings of Reynaldo O. Yana and Antonio M. Atalig,* 2014 MP 1 ¶ 15 (quoting NMI R. EVID. 201(b)).

¶ 78    Further, "[w]e may take judicial notice of undisputed matters of public record, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), including documents on file in federal or state courts. See *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

¶ 79    The exhibits proposed by Appellees herein fall within the standard of judicial notice set forth in Rule 201(b) as they constitute pleadings and orders that are directly relevant to the issues before this Court. They are matters of public record and, as evidenced by Appellants' lack of objection to them, are not being disputed.

### V. CONCLUSION

¶ 80    For the foregoing reasons, we GRANT Appellees' Request for Judicial Notice and AFFIRM the Probate Court's Order Granting Appellees' Motion for Reconsideration. We, therefore, REMAND this matter to the Probate Court for further actions and proceedings not inconsistent with this Opinion.

So Ordered this 16th day of December, 2023.


/s/
MARIA TERESA B. CENZON
Justice Pro Tempore


/s/
ELYZE M. IRIARTE
Justice Pro Tempore


/s/
BENJAMIN C. SISON
Justice Pro Tempore


COUNSEL

Pamela Brown, Counsel for Co-Trustees for the PB Manglona Family Trust, Petitioner-Appellant.

Co-Administrators of the Estate of Bernadita A. Manglona, Pro Se, Respondent-Appellee.


NOTICE

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In any event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, e–mail Supreme.Court@NMIJudiciary.gov.*

E-FILED
CNMI SUPREME COURT
E-filed: Dec 16 2023 01:48PM
Clerk Review: Dec 16 2023 01:49PM
Filing ID: 71640438
Case No.: 2023-SCC-0003-CIV
Judy Aldan





IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

### IN RE THE ESTATE OF BERNADITA A. MANGLONA,

*Deceased.*

---

**Supreme Court No. 2023-SCC-0003-CIV**
Superior Court No. 13-0195-CV

### JUDGMENT

Appellants, Co-Trustees for the PB Manglona Family Trust, appeal the Order Granting Appellee's Motion for Reconsideration. For the reasons discussed in the accompanying opinion, the Court AFFIRMS the order and REMANDS the matter for further actions not inconsistent with the opinion.

ENTERED this 16th day of December, 2023.


 /s/
JUDY T. ALDAN
Clerk of the Supreme Court